UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LINNIE STAGGS, as administrator of the ESTATE of ROBERT E. STAGGS, deceased, and MELISSA STAGGS,

        Plaintiffs,

  v.

DOCTOR'S HOSPITAL OF MANTECA, INC., et al.,

        Defendants.

No. 2:11-cv-00414-MCE-KJN

MEMORANDUM AND ORDER

----oo0oo----

Plaintiffs Linnie Staggs, as administrator of the Estate of Robert E. Staggs, and Melissa Staggs (collectively, "Plaintiffs") seek redress from defendant Doctor's Hospital of Manteca, Inc. ("DHM"), and a number of individual defendants regarding the medical treatment and subsequent death of Robert E. Staggs ("Decedent") while in custody at the Sierra Conservation Center ("SCC").

///
///
///

1

Presently before the Court is the Motion to Dismiss of Defendants Curtis Allen, M.D., Sharon Aungst, Edwin Bangi, M.D., Jonathan Benak, P.A., Frank Chavez, Ivan D. Clay, John Krpan, D.O., Jack St. Clair, M.D., and Tim Virga (collectively, "Defendants")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss Pl.'s First Am. Compl. ["MTD"], filed August 1, 2011 [ECF No. 33].)  For the reasons set forth below, Defendants' motion is GRANTED.[2]

## BACKGROUND[3]

Decedent had the Hepatitis C virus ("HCV") and a history of liver problems, including cirrhosis.  In May 2009, while incarcerated at SCC, Decedent started experiencing darkened urine, skin itching and sores across his body, and also developed abdominal pain.  The prison's medical staff prescribed lotions and pain killers to treat the outward symptoms of Decedent's itching and pain.  Decedent's relatives, relying on outside medical advice, allegedly warned Decedent that his symptoms pointed to liver failure.

///
///

---

[1] On September 20, 2011, the Court dismissed Defendants Aungst, Chavez, Clay, and Virga from the instant action pursuant to the parties' stipulation.  [ECF 42].

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[3] The following facts are taken from Plaintiffs' First Amended Complaint ("FAC"), filed June 9, 2011 [ECF No. 4].

2

In June 2009, test results revealed that Decedent had a significant rise in alpha-feto protein ("AFP") levels, which allegedly should have been a "red flag" for Defendants, because the rise of AFP was suggestive of hepatocellular carcinoma ("HCC"), a liver cancer. However, Defendants Bangi and Krpan, healthcare providers at SCC, failed to repeat the test, which Plaintiffs contend violated the applicable standard of care. On August 30, 2009, Decedent underwent an MRI which suggested a lesion. On October 4, 2009, Decedent underwent another MRI, the results of which revealed no evidence of a tumor as determined by Defendant Russin. According to Plaintiffs, the interpretation of the second test's results was erroneous and in violation of the standard of care, or, alternatively, the medical personnel negligently conducted the test leading to the erroneous results.

On December 26, 2009, Decedent went "man-down," a condition that is designed to draw immediate attention from the custodial and medical personnel at the prison. Decedent was taken to the Sonora Regional Medical Center hospital, where he had an ultrasound and a contrast CT scan performed. The test results revealed a 5 cm lesion in the right lobe of his liver and other lesions throughout the liver. However, Decedent's treating physicians did not recheck Decedent's AFP test, but instead interpreted the test results as indicative of metastatic colon cancer. The physicians did not report the possibility of HCC, despite two previous negative occult blood tests and the rising AFP levels in the context of HCV-induced cirrhosis.

///
///

According to Plaintiffs, the physicians' actions fell below the applicable standard of care, because a metastatic disease in the setting of cirrhosis is very uncommon, whereas HCC in such a situation is much more likely.

On December 29, 2009, Decedent again went "man-down" and was taken to the Sonora Regional Medical Center. Decedent complained of a severe stabbing pain in the right upper quadrant of his body. An X-ray of Decedent's abdominal area revealed liver damage and cirrhosis.

On or about December 14-31, 2009, Defendant Krpan decided, and Defendants St. Clair and Allen approved, that Decedent should undergo a liver biopsy on January 14, 2010. Plaintiffs allege that this decision violated the standard of care because (1) where cirrhosis is present, conducting a biopsy when a lesion is suspected to be HCC creates a substantial risk that the tumor will spread along the needle track; and (2) a liver biopsy, while a safe procedure in the normal liver, is much more likely to cause bleeding in a cirrhotic liver. Two hospitals allegedly refused to perform the biopsy because of the associated risks. According to Plaintiffs, Defendants Krpan, Allen and St. Clair also violated the standard of care when they opted to do a three-pass core liver biopsy rather than a fine needle aspirate of the lesion, because the three-pass procedure allegedly created a significantly greater risk of bleeding. Plaintiffs allege that Decedent's biopsy likely caused the large drop in hemoglobin (from 12 to 7), and the bloody ascites fluid, which precipitated Decedent's subsequent complications.

///

4

1        On January 22, 2010, Decedent underwent biopsy at DHM.
2   Although the medical standard required Decedent to rest for three
3   or more hours after the operation, two correctional
4   transportation officers, Does 1 and 2, allegedly compelled
5   Decedent to leave his hospital bed after only 20 minutes of rest.
6   During the ride to the prison, Decedent started feeling severe
7   and sharp abdominal pain.  Upon arrival to SCC on January 22,
8   Decedent was placed into the Operating Housing Unit for the night
9   and, on January 23, was moved back to his cell.  Decedent's
10  condition kept declining: his abdomen continued to swell, he
11  could no longer urinate, started vomiting, could not sleep and
12  was in severe pain.  He unsuccessfully tried to alert the SCC
13  correctional and medical personnel about his condition.
14       At around 3:15 p.m. on January 24, 2010, Decedent again went
15  "man-down."  At 5:00pm, he was transferred to the prison's
16  Operating Housing Unit.  On January 25, 2010, Decedent was taken
17  to the San Joaquin Medical Center for emergency treatment.  On
18  February 4, 2010, he was transferred to the California Medical
19  Facility in Vacaville where he died on February 12, 2010, of
20  blood loss into his peritoneum.  The blood loss was allegedly the
21  result of Decedent's three-pass liver biopsy.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[4] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also assume that "general allegations embrace those specific facts that are necessary to support a claim." Smith v. Pacific Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level."

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

6

1  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur
2  R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)
3  (stating that the pleading must contain something more than a
4  "statement of facts that merely creates a suspicion [of] a
5  legally cognizable right of action.")).
6      Furthermore, "Rule 8(a)(2) . . . requires a 'showing,'
7  rather than a blanket assertion, of entitlement to relief."
8  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations
9  omitted).  "Without some factual allegation in the complaint, it
10 is hard to see how a claimant could satisfy the requirements of
11 providing not only 'fair notice' of the nature of the claim, but
12 also 'grounds' on which the claim rests." Id. (citing 5 Charles
13 Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading
14 must contain "only enough facts to state a claim to relief that
15 is plausible on its face." Id. at 570.  If the "plaintiffs . . .
16 have not nudged their claims across the line from conceivable to
17 plausible, their complaint must be dismissed." Id.  However, "a
18 well-pleaded complaint may proceed even if it strikes a savvy
19 judge that actual proof of those facts is improbable, and 'that a
20 recovery is very remote and unlikely.'" Id. at 556 (quoting
21 Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
22     A court granting a motion to dismiss a complaint must then
23 decide whether to grant a leave to amend.  Leave to amend should
24 be "freely given" where there is no "undue delay, bad faith or
25 dilatory motive on the part of the movant, . . . undue prejudice
26 to the opposing party by virtue of allowance of the amendment,
27 [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S.
28 178, 182 (1962).

7

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F. 3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**ANALYSIS**

Plaintiffs assert two federal claims under § 1983 for violations of Decedent's Eighth Amendment rights (first and fifth claims for relief) and five state-law claims: (1) violation of California Government Code § 845.6 (second claim for relief); (2) negligence based on failure to diagnose and treat Decedent's liver condition (third claim for relief); (3) violation of California Civil Code § 52.1 (fourth claim for relief); (4) negligence based on failure to provide post-biopsy recovery (sixth claim for relief); and (5) wrongful death (seventh claim for relief).

**A.   First Claim for Relief: Denial of Rights under the Eighth and Fourteenth Amendment Against Defendants Allen, Bangi, Krpan, and St. Clair**

Plaintiff's first claim for relief arises under 42 U.S.C. § 1983.  The FAC alleges that Defendants knew of Decedent's life-threatening medical condition and acted with deliberate indifference in failing to provide appropriate medical care to Decedent.  (FAC ¶¶ 67-69.)
///

8

1 Defendants contend that Plaintiffs have failed to state a viable
2 Eighth Amendment claim under § 1983 because Plaintiffs'
3 allegations against Allen, Bangi, Benak,[5] Krpan, and St. Clair do
4 not amount to allegations of deliberate indifference, but merely
5 to a "disagreement of medical opinion."   (MTD at 6-7.)

6      Under 42 U.S.C. § 1983, an individual may sue "[e]very
7 person, who, under color of [law] subjects" him "to the
8 deprivation of any rights, privileges, or immunities secured by
9 the Constitution and laws."  An individual may be liable for
10 deprivation of constitutional rights "within the meaning of
11 section 1983, 'if he does an affirmative act, participates in
12 another's affirmative acts, or omits to perform an act which he
13 is legally required to do that causes the deprivation of which
14 complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of
15 Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).

16      In order to state an Eighth Amendment claim for inadequate
17 medical care, "a prisoner must allege acts or omissions
18 sufficiently harmful to evidence deliberate indifference to
19 serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106
20 (1976).
21 ///

---

[5] Although Benak is not specifically named in Plaintiffs' first claim for relief, Defendants nevertheless contend that Benak's failure to summon medical care does not rise to the level of a constitutional violation.  (MTD at 7.)  In their opposition, Plaintiffs do not address Defendants' assertions regarding Benak. While Plaintiffs' second cause of action under California Government Code § 845.6 clearly names Benak as a defendant, neither the FAC's "Statement of Facts" section nor the first cause of action references any wrongful acts on the part of Benak.  Thus, the Court concludes that Plaintiffs have not named Banak as a defendant in their first claim for relief and therefore disregards Defendants' arguments regarding Plaintiffs' failure to state a § 1983 claim against Benak.

Plaintiff must plead sufficient facts to permit the Court to infer that (1) Plaintiff had a "serious medical need" and that (2) individual Defendants were "deliberately indifferent" to that need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A prisoner can satisfy the "serious medical need" prong by demonstrating that "failure to treat [his] condition could result in further significant injury or the unnecessary and wonton infliction of pain." Id. (internal citations and quotations omitted). Defendants acknowledge that Plaintiffs have adequately alleged that Decedent had a serious medical need. (Defs.' Reply to Pls.' Opp., filed Sept. 22, 2011 [ECF No. 44], at 2.)

Thus, the issue for the Court is whether Plaintiffs have sufficiently alleged that Defendants were deliberately indifferent to Decedent's serious medical need. Under the deliberate indifference standard, individual Defendants are not liable under the Eighth Amendment for their part in allegedly denying necessary medical care unless they knew "of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002). Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk."
///

1   Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895,
2   914 (9th Cir. 2001)).  Plaintiffs "need not show that a prison
3   official acted or failed to act believing that harm actually
4   would befall on inmate; it is enough that the official acted or
5   failed to act despite his knowledge of a substantial risk of
6   serious harm."  Farmer, 511 U.S. at 842.
7        "The indifference to medical needs must be substantial; a
8   constitutional violation is not established by negligence or 'an
9   inadvertent failure to provide adequate medical care.'"
10  Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995)
11  (quoting Estelle, 429 U.S. at 105-06).  Generally, defendants are
12  "deliberately indifferent to a prisoner's serious medical needs
13  when they deny, delay, or intentionally interfere with medical
14  treatment."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.
15  2002); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir.
16  2003).  However, "a complaint that a physician has been negligent
17  in diagnosing or treating a medical condition does not state a
18  valid claim of medical mistreatment under the Eighth Amendment.
19  Medical malpractice does not become a constitutional violation
20  merely because the victim is a prisoner."  Estelle, 429 U.S. at
21  106.  Further, a mere delay in receiving medical treatment,
22  without more, does not constitute "deliberate indifference,"
23  unless the plaintiff can show that the delay caused serious harm
24  to the plaintiff.  Wood v. Housewright, 900 F.2d 1332, 1335
25  (9th Cir. 1990).
26       Defendants' acts and omissions, as alleged in the FAC, do
27  not plausibly rise to the level of deliberate indifference to
28  Decedent's medical needs.

11

This case does not present a situation where prison personnel completely failed to treat Decedent or where the delay in the provision of medical care was so significant as to constitute deliberate indifference to Decedent's serious medical needs.

In particular, Plaintiffs' deliberate indifference claim against Krpan is based on Krpan's alleged failure to conduct additional testing and his decision to prescribe a liver biopsy for Decedent. (FAC ¶¶ 35,45,46.)  Plaintiffs allege that, by prescribing a biopsy, Krpan "violated the standard of care," because of substantial risks associated with conducting this procedure when a lesion is suspected to be HCC where cirrhosis is present.  (FAC ¶ 45.)  Krpan also "violated the standard of care" by opting for a three-pass core liver biopsy rather than a fine needle aspirate of the lesion, because the three-pass procedure allegedly creates a much greater risk of bleeding.  (FAC ¶ 47.) In support of their allegations of deliberate indifference, Plaintiffs rely on the fact that two hospitals refused to perform the biopsy prescribed by Krpan because of the associated risks. (FAC ¶ 46.)

The allegations against Krpan are insufficient to state a claim for deliberate indifference.  Plaintiffs' allegations actually suggest that Krpan addressed Decedent's requests by prescribing medical treatment, albeit not the one Plaintiffs would have preferred.  A difference of medical opinion over the proper course of medical treatment does not constitute deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).
///

12

Moreover, Plaintiffs' allegations that Krpan "violated a standard of care" suggest, at best, professional negligence. An allegation of medical malpractice is not sufficient to state a claim for a constitutional violation under the Eighth Amendment. Estelle, 429 U.S. at 106. Thus, Plaintiffs failed to state a claim for deliberate indifference to Decedent's medical needs against Krpan.

Plaintiffs' allegations against the other named Defendants are even more deficient. The only factual allegation in the FAC relevant to St. Clair and Allen is that these Defendants approved Decedent's biopsy after the biopsy was prescribed by Krpan. (FAC ¶ 45.) This allegation is plainly insufficient to demonstrate that St. Clair and Allen were deliberately indifferent to Decedent's serious medical needs. By stating that St. Clair and Allen approved medical treatment for Decedent's condition, Plaintiffs demonstrate the opposite of denial, delay or intentional interference with Decedent's medical treatment, as required to state a cognizable claim based on deliberate indifference. See Hallett, 296 F.3d at 744; Lolli, 351 F.3d at 419.

Plaintiffs' deliberate indifference claim against Bangi rests solely on Bangi's alleged failure to conduct additional testing, which, according to Plaintiffs, was a violation of the standard of care. (FAC ¶ 35.) Such an isolated incident of neglect does not amount to a constitutional violation under the Eighth Amendment.

///
///

13

As the Supreme Court has held, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment" within the meaning of the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 107.  Thus, Plaintiffs have failed to state a viable Eighth Amendment claim against Bangi.

Accordingly, the Court grants Defendants' motion to dismiss the first claim for relief with leave to amend.

### B.    Fifth Claim for Relief: Denial of Rights under the Eighth and Fourteenth Amendment against Does 1-2

The Court sua sponte analyzes the sufficiency of Plaintiffs' fifth claim for relief because, after the dismissal of Plaintiff's first claim, the fifth claim is the only basis for the Court's exercise of federal jurisdiction, and because no defendant can move to dismiss this claim as it is brought only against Doe Defendants.  See <u>Wong v. Bell</u>, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim, but the court must give notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a written memorandum in opposition of such motion.'") (citations omitted); <u>Urias v. Quiroz</u>, 895 F. Supp. 262, 264 (S.D. Cal. Apr. 27, 1995) ("The court has the authority to dismiss the Doe defendants sua sponte.").

///
///
///

1    Plaintiffs allege that Defendant correctional officers Does 1-2 were deliberately indifferent to Decedent's serious medical needs when they transferred Decedent from his MDH hospital bed back to SCC, thus depriving Decedent of the necessary rest after the biopsy procedure. (FAC ¶ 88.) According to Plaintiffs, the applicable medical standard of care prescribes that a patient should be placed to rest for three or more hours immediately after the operation. (FAC ¶ 50.) Yet, correctional officers Does 1-2 compelled Decedent to leave his hospital bed only after 20 minutes of rest. (FAC ¶ 51.)

   The Court finds Plaintiffs' allegations against Defendant Does 1-2 insufficient to state a claim for the Eighth Amendment violation of Decedent's rights. As the Court explained earlier, the "deliberate indifference" standard is not satisfied unless a plaintiff can plausibly demonstrate that the defendant knew of the excessive risk to the prisoner's health and safety but disregarded that risk. Farmer, 511 U.S. at 837; Gibson, 290 F.3d at 1187-88. "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk." Gibson, 290 F.3d at 1188. Nothing in the FAC suggests that Does 1 and 2 knew about the medical standard prescribing a three-hour post-biopsy rest period or that they were aware of the "excessive" risk to Decedent's health associated with transporting him to SCC after only twenty minutes of rest.

///
///
///

Accordingly, the Court finds Plaintiffs' allegations insufficient to support a cognizable claim for deliberate indifference to Decedent's medical needs against Defendants Does 1 and 2. Because the Court cannot dismiss this claim with prejudice without affording Plaintiffs the opportunity to cure the FAC's deficiencies or to submit a memorandum in opposition of such dismissal, see Wong, 642 F.2d at 361-62, the Court dismisses Plaintiffs' fifth claim for relief with leave to amend.

### C.   State-law Claims

Having found that both of Plaintiffs' federal claims fail under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismisses those claims with leave to amend. 28 U.S.C. § 1367(c).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' First claim for relief is GRANTED with leave to amend. The Court dismisses Plaintiffs' Fifth claim for relief sua sponte with leave to amend. Having dismissed Plaintiffs federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims at this time. 28 U.S.C. § 1367(c).

///
///
///

16

Plaintiffs are directed to file an amended complaint, should they choose to do so, within twenty (20) days of this Order. If no amended complaint is filed within said twenty (20) days, this action will be dismissed without leave to amend without any further notice from the court.

IT IS SO ORDERED.

Dated: March 28, 2012

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE