UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNIE STAGGS, as administrator of the ESTATE OF ROBERT E. STAGGS, deceased, and MELISSA STAGGS,<br><br>Plaintiffs,<br><br>v.<br><br>DOCTOR'S HOSPITAL OF MANTECA, INC., et al.,<br><br>Defendants. | No. 2:11-cv-00414-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Linnie Staggs, as administrator of the Estate of Robert E. Staggs, and Melissa Staggs (collectively, "Plaintiffs") seek redress from defendant Doctor's Hospital of Manteca, Inc. ("DHM"), and a number of individual defendants regarding the medical treatment and subsequent death of Robert E. Staggs ("Decedent") while in custody at the Sierra Conservation Center ("SCC"). Plaintiffs allege claims for violation of Decedent's constitutional rights under the Eighth and Fourteenth Amendment to the U.S. Constitution and a number of state law claims. On March 28, 2012, this Court granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint with leave to amend. [ECF No. 47.]

///

///

Presently before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint, filed by Defendants Curtis Allen, M.D., Edwin Bangi, M.D., Jonathan Benak, P.A., John Krpan, D.O., and Jack St. Clair, M.D. (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. ["MTD"], filed May 30, 2012 [ECF No. 59].)  For the reasons set forth below, Defendants' motion is GRANTED.[1]

## BACKGROUND[2]

Decedent had the Hepatitis C virus and a history of liver problems, including cirrhosis.  In May 2009, while incarcerated at SCC, Decedent started experiencing darkened urine, skin itching and sores across his body, and also developed abdominal pain.  The prison's medical staff prescribed "generic lotions" and "mild pain-killers" to treat the outward symptoms of Decedent's itching and pain.  (SAC ¶ 33.)  Decedent's relatives, relying on outside medical advice, allegedly warned Decedent that his symptoms pointed to liver failure.

In June 2009, Defendant Bangi administered a hepatic function panel blood test which showed that Decedent had a rise in alpha-feto protein ("AFP") levels, which allegedly should have been a "red flag" for Defendants, because the rise of AFP was suggestive of hepatocellular carcinoma ("HCC"), a liver cancer.  However, Defendants Bangi and Krpan, healthcare providers at SCC, failed to repeat the test.

From June through August 2009, Decedent allegedly continued to display HCC symptoms and was in constant pain and serious discomfort.  On August 30, 2009, Decedent reported stabbing pain in his abdomen.

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2] The following facts are taken from Plaintiffs' Second Amended Complaint ("SAC"), filed May 2, 2012 [ECF No. 51].

The same day, he underwent an MRI which suggested a lesion. On September 2 and 8, 2009, Decedent again informed the prison medical personnel that his symptoms were worsening, that he was in severe pain and that he could not sleep. Despite Decedent's serious medical symptoms, Defendant Krpan continued treating Decedent with topical creams and mild painkillers, including lotions such as hydrocortisone and Elimite, antihistamines such as Claritine and Hydroxyzine, and painkiller Codeine.

On October 4, 2009, Decedent underwent another MRI, the results of which revealed no evidence of a tumor as determined by Defendant Russin. According to Plaintiffs, the interpretation of the test's results was "erroneous" and "below any arguable standard of medical care." (Id. ¶ 43.)

On December 8, 2009, Decedent submitted a "602" inmate appeal form requesting medical care. On December 21, 2009, Decedent received a response, signed by Defendant St. Clair, returning Decedent's "602" appeal for "abuse of the appeal procedure." (Id. ¶¶ 45-46.) On December 23, 2009, Decedent filed an appeal of St. Clair's decision. Decedent believed that SCC medical personnel were "angry with him over his repeated pleas for help and the administrative complaints he had filed regarding lack of medical treatment." (Id. ¶ 47.)

On December 26, 2009, Decedent went "man-down," a condition that is designed to draw immediate attention from the custodial and medical personnel at the prison. Decedent was taken to the Sonora Regional Medical Center hospital where he had an ultrasound, an X-Ray and a contrast CT scan performed. The test results revealed a 5 cm lesion in the right lobe of his liver and other lesions throughout the liver. However, Defendants Bangi, Krpan and St. Clair allegedly continued to withhold Decedent's medical treatment. The physicians did not report the possibility of HCC, despite two previous negative occult blood tests and the rising AFP levels in the context of HCV-induced cirrhosis.

///

///

On or about December 14-31, 2009, Defendant Krpan decided, and Defendants St. Clair and Allen approved, that Decedent should undergo a liver biopsy on January 14, 2010. Plaintiffs allege that this decision was erroneous, unnecessary and "clearly not an acceptable protocol" because (1) where cirrhosis is present, conducting a biopsy when a lesion is suspected to be HCC creates a substantial risk that the tumor will spread along the needle track; and (2) a liver biopsy, while a safe procedure in the normal liver, is much more likely to cause bleeding in a cirrhotic liver.  (Id. ¶¶ 53-55.)  Two hospitals allegedly refused to perform the biopsy because of the associated risks.  According to Plaintiffs, Defendants Krpan, Allen and St. Clair opted to do a three-pass core liver biopsy rather than a fine needle aspirate of the lesion, despite the three-pass biopsy's significant risk of bleeding.  Plaintiffs allege that Decedent's biopsy likely caused the large drop in hemoglobin and the bloody ascites fluid, which precipitated Decedent's subsequent complications and death.

On January 22, 2010, Decedent underwent biopsy at DHM.  Although the relevant medical standard required Decedent to rest for three to four hours after the operation, two correctional transportation officers, Does 1 and 2, allegedly compelled Decedent to leave his hospital bed after less than an hour of rest.  According to Plaintiffs, the transportation officers refused Decedent's request to lie down, forcing him to sit up in the back seat of the vehicle, which caused Decedent being "abrasively tossed around" during the ride to the prison.  (Id. ¶ 61.)  Upon arrival to SCC on January 22, Decedent was placed into the Operating Housing Unit for the night and, on January 23, was moved back to his cell.  According to Plaintiffs, no supervision, treatment, or medical care was provided to Decedent after he returned to his cell.  Decedent's condition kept declining: his abdomen continued to swell; he could no longer urinate, started vomiting, could not sleep and was in severe pain.  He unsuccessfully tried to alert the SCC correctional and medical personnel about his condition.

///

///

At around 3:15 p.m. on January 24, 2010, Decedent again went "man-down." At 5:00 p.m., he was transferred to the prison's Operating Housing Unit. On January 25, 2010, Decedent was taken to the San Joaquin Medical Center for emergency treatment. On January 26, 2010, the results of Decedent's liver biopsy confirmed his HCC diagnosis. On February 4, 2010, Decedent was transferred to the California Medical Facility in Vacaville where he died on February 12, 2010, of blood loss into his peritoneum. The blood loss was allegedly the result of Decedent's three-pass liver biopsy.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also assume that "general allegations embrace those specific facts that are necessary to support a claim." Smith v. Pacific Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation."

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

5

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F. 3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

///

///

**ANALYSIS**

Plaintiffs assert two federal claims under § 1983 for violations of Decedent's Eighth Amendment rights (first and fifth claims for relief) and five state-law claims: (1) violation of California Government Code § 845.6 (second claim for relief); (2) negligence based on failure to diagnose and treat Decedent's liver condition (third claim for relief); (3) violation of California Civil Code § 52.1 (fourth claim for relief); (4) negligence based on failure to provide post-biopsy recovery (sixth claim for relief); and (5) wrongful death (seventh claim for relief).

### A. First Claim for Relief: Denial of Rights under the Eighth and Fourteenth Amendment Against Defendants Allen,[4] Bangi, Benak, Krpan and St. Clair

Plaintiff's first claim for relief arises under 42 U.S.C. § 1983. The SAC alleges that Defendants knew of Decedent's life-threatening medical condition and acted with deliberate indifference in failing to provide appropriate medical care to Decedent. (SAC ¶¶ 79-86.) In particular, Plaintiffs allege that Defendants Allen and St. Clair failed "to take necessary action to remedy known life threatening medical failures" within the California Department of Corrections and Rehabilitation ("CDCR") and failed to "implement even a minimally-adequate system for promptly transferring inmates with life-threatening deceases and conditions to facilities that were able to treat these conditions." (SAC ¶ 84.)

///
///
///

---

[4] Plaintiffs have not explicitly named Allen as a Defendant in their first claim for relief. (See SAC ¶ 79.) However, Plaintiffs' allegations pertaining to their first claim appear to be directed, inter alia, at Defendant Allen. (See SAC ¶¶ 84-85.) Defendants' MTD has addressed Plaintiffs' allegations against Defendant Allen. (See MTD at 6.) Therefore, the Court will treat Defendant Allen as a named defendant in Plaintiffs' first claim for relief.

Further, Defendants Bangi, Krpan, Allen, St. Clair and Does 4-50 allegedly knew about Decedent's life-threatening condition but failed to "transfer Decedent to another facility with the appropriate level of medical resources and expertise" and failed to "provide the necessary level of care and treatment" to Decedent. (Id. ¶ 85.) Defendants contend that Plaintiffs have failed to state a viable Eighth Amendment claim under § 1983 because Plaintiffs' allegations do not amount to allegations of deliberate indifference but, at best, to a claim for negligence. (MTD at 6.)

Under 42 U.S.C. § 1983, an individual may sue "[e]very person, who, under color of [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." An individual may be liable for deprivation of constitutional rights "within the meaning of section 1983 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).

In order to state an Eighth Amendment claim for inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Plaintiff must plead sufficient facts to permit the Court to infer that (1) Plaintiff had a "serious medical need," and that (2) individual Defendants were "deliberately indifferent" to that need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A prisoner can satisfy the "serious medical need" prong by demonstrating that "failure to treat [his] condition could result in further significant injury or the unnecessary and wonton infliction of pain." Id. (internal citations and quotations omitted). Defendants do not dispute that Plaintiffs have adequately alleged Decedent's serious medical need.

///
///
///
///

Thus, the issue for the Court is whether Plaintiffs have sufficiently alleged that individual Defendants were deliberately indifferent to Decedent's serious medical need. Under the deliberate indifference standard, individual Defendants are not liable under the Eighth Amendment for their part in allegedly denying necessary medical care unless they knew "of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002). Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk." Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001)). Plaintiffs "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

"The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'" Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting Estelle, 429 U.S. at 105-06). Generally, defendants are "deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

///

Further, a mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the delay caused serious harm to the plaintiff. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

Plaintiffs have failed to cure the deficiencies in their complaint. Defendants' acts and omissions, as alleged in the SAC, still do not rise to the level of deliberate indifference to Decedent's medical needs. This case does not present a situation where prison personnel completely failed to treat Decedent or where the delay in the provision of medical care was so significant as to constitute a constitutional deprivation.

First, Plaintiffs allege that Defendants St. Clair and Allen failed to "take necessary action to remedy known life-threatening medical failures within CDCR, and [failed] to implement even a minimally-adequate system for promptly transferring inmates with life-threatening diseases and conditions to facilities that were able to treat these conditions". (SAC ¶ 84.) This broad allegation of system-wide constitutional deficiencies in providing medical care to inmates appears to be based on supervisory roles of Defendants St. Clair and Allen within CDCR.[5]

Government officials acting as supervisors may be liable under § 1983 under certain circumstances. "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinate." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). A defendant may be held liable as a supervisor under § 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Starr, 652 F.3d at 1207.

///

---

[5] Defendant Allen was the Chief Physician and Surgeon at SCC at the time of the alleged events and was responsible for the supervision and practices regarding the delivery of surgical and other services to inmates at SCC. (SAC ¶ 10.) Defendant St. Clair was the Chief Medical Officer at SCC at the time of the alleged events and was responsible for the supervision and practices regarding the delivery of health care services to inmates at SCC. (Id. ¶ 9.)

The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's Constitutional rights can be established in a number of ways. The plaintiff may show that the supervisor set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. Dubner v. City & County of S.F., 266 F. 3d 959, 968 (9th Cir. 2001); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991).

Also, a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates may establish supervisory liability. Starr, 652 F.3d at 1208; Larez, 946 F.2d at 646. Finally, a supervisor's acquiescence in the alleged constitutional deprivation, or conduct showing deliberate indifference toward the possibility that efficient performance of the task may violate the rights of others, may establish the requisite causal connection. Starr, 652 F.3d at 1208; Menotti v. City of Seattle, 409 F. 3d 1113, 1149 (9th Cir. 2005).

Plaintiff's allegation about "known life-threatening medical failures within CDCR," (see SAC ¶ 84), is an unsupported conclusory statement. The SAC's "Statement of Facts" section is limited to a description of Decedent's own experience of the alleged medical mistreatment at SCC and is devoid of facts demonstrating any other "medical failures" within CDCR. Additionally, the SAC does not plausibly demonstrate that either St. Clair or Allen knew of such system-wide constitutional deprivations and refused to cure them, or that these defendants' own culpable action or inaction in the training, supervision, or control of their subordinates was the cause of the alleged constitutional deprivations, or that St. Clair and Allen acquiesced in the alleged constitutional deprivations.

Further, Plaintiffs allege that Defendants Bangi, Krpan, Allen, St. Clair and Does 4-50 were aware of Decedent's life-threatening condition which "warranted immediate transfer to another facility with the appropriate level of medical resources and expertise." (Id. ¶ 85.)

According to Plaintiffs, these Defendants acted with deliberate indifference to Decedent's serious medical needs when they failed "to provide the necessary level of care and treatment." (Id.)  Plaintiffs' sweeping assertions remain unsupported by the SAC's factual allegations and do not meet the "high legal standard" of deliberate indifference to a prisoner's serious medical needs. See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Contrary to Plaintiffs' allegations, the SAC actually suggests that the aforementioned Defendants provided medical treatment to Decedent, albeit not the one Plaintiffs would have preferred.

As alleged, Decedent started experiencing symptoms of liver decease in May 2009. (Id. ¶ 30.)  Shortly thereafter, in June 2009, Defendant Bangi administered a hepatic function panel blood test which showed that Decedent had an AFP level of 31, as well as elevated AST, ALT, MCV and MCH levels. (Id. ¶ 36.)  According to Plaintiffs, Defendant Bangi, Krpan and Does 31-50 acted with deliberate indifference to Decedent's serious medical needs when they failed to repeat the AFP test although "a rise in AFP above 31 is suggestive of acute HCV serious liver disease or cirrhosis." (Id. ¶¶ 36-37.)  Plaintiffs' argument is unpersuasive.  First, as alleged in the SAC, Decedent's test did not demonstrate a rise in AFP "above 31."  Second, as this Court stated in its previous Order, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment" within the meaning of the Eighth Amendment. Estelle, 429 U.S. at 107.

Further, as demonstrated by the SAC, Defendants did conduct additional tests to diagnose Decedent's medical condition.  In particular, two months after the AFP test, SCC's medical personnel ordered an MRI test which suggested a lesion. (SAC ¶¶ 39-40.)  Three days later, on September 2, 2009, Decedent was seen by an RN employed by SCC who reported Decedent's complaints of pain to Defendant Krpan. (Id. ¶ 41.)  Six days later, on September 8, 2009, Defendant Krpan evaluated Decedent's condition and prescribed topical creams to treat the outward symptoms of Decedent's condition. (Id. ¶ 42.)

The SAC also demonstrates that Decedent was given antihistamines, like Claritin and Hydroxyzine, and painkillers including Codeine. (Id. ¶ 33.) Plaintiffs contend that Krpan's decision to treat Decedent with lotions and painkillers, instead of medication for liver disease treatment, demonstrates deliberate indifference to Decedent's serious medical needs. (SAC ¶¶ 33, 42.) However, nothing in the SAC suggests that Defendant Krpan or any other members of SCC's medical staff knew that Decedent suffered from a serious liver disease in September 2009.[6] On the contrary, as Plaintiffs themselves allege, a second MRI test, which Decedent underwent on October 4, 2009, showed "no evidence of tumor." (Id. ¶ 43.)

Plaintiffs contend that the results of the second MRI, which Decedent underwent in October 2009, were "erroneous." (Id.) Plaintiffs' contention here does not bear on the merits of their constitutional claim against the medical personnel at SCC because the MRI test was performed at an outside hospital, Mark Twain St. Joseph Hospital in San Andreas, California. (Id.) What Plaintiffs' allegation demonstrates, however, is that SCC's medical personnel addressed Decedent's medical concerns by transferring Decedent to "another facility with the appropriate level of medical resources and expertise" where Decedent underwent medical evaluation. (See id. ¶ 85.) The fact that Plaintiffs are dissatisfied with the medical services provided to Decedent by an outside healthcare provider does not make SCC's medical personnel deliberately indifferent to Decedent's medical needs.

The SAC further alleges that, on December 26, 2010, Decedent went "man-down" because "he could no longer endure the pain." (Id. ¶ 48.) The same day, Decedent was taken to the Sonora Regional Medical Center Hospital, where he was evaluated by medical personnel and underwent an extensive medical testing (including an ultrasound, a contrast CT scan, and an X-Ray), which reported a 5 cm lesion in the right lobe of Decedent's liver and other lesions throughout the liver. (Id. ¶¶ 48-49, 52.)

---

[6] In fact, Decedent was not diagnosed with hepatocellular carcinoma until January 26, 2010. (SAC ¶ 74.)

This allegation again demonstrates that Defendants promptly responded to Decedent's medical needs by immediately transferring Decedent to an outside hospital for emergency treatment and medical testing.

Plaintiffs further contend that, "despite the results confirming hepatocellular carcinoma, . . . Defendants Bangi, Krpan, and St. Clair continued to withhold [Decedent's] treatment in deliberate indifference to his profound medical need." (Id. ¶ 50.) However, this contention is contradicted by SAC's assertion that, in December 2009, Defendant Krpan, with approval from Defendants St. Clair and Allen, secured and scheduled Decedent's liver biopsy at Doctor's Hospital of Manteca. (Id. ¶ 53.) Decedent underwent the biopsy less than a month later. (Id. ¶ 58.) As this Court explained in its previous Order, approval of Decedent's biopsy by Defendants Krpan, St. Clair and Allen demonstrates the opposite of "denial, delay or intentional interference" with Decedent's medical treatment, as required to state a cognizable claim based on deliberate indifference. See Hallett, 296 F.3d at 744; Lolli, 351 F.3d at 419.

To support their claim of deliberate indifference, Plaintiffs also dispute the appropriateness of the medical treatment chosen by Defendants for Decedent. In particular, Plaintiffs allege that Decedent's liver biopsy was "an unnecessary diagnostic measure" with substantial risks and that "non-life-threatening procedures were available." (Id. ¶¶ 53-54.) Additionally, Plaintiffs disagree with Defendants' decision to opt for a three-pass core liver biopsy rather than a fine needle aspirate of the lesion, because the three-pass procedure allegedly creates a much greater risk of bleeding. (Id. ¶ 56.) In support of their allegations of deliberate indifference, Plaintiffs rely on the fact that two hospitals refused to perform the biopsy prescribed by Defendant Krpan because of the associated risks. (Id. ¶ 55.)

As the Court explained in its previous Order, a difference of medical opinion over the proper course of medical treatment does not constitute deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiffs' allegations with respect to Decedent's liver biopsy amount to such a difference of medical opinion and, at best, suggest medical malpractice which is not sufficient to state a claim for a constitutional violation under the Eighth Amendment. See Estelle, 429 U.S. at 106.

Finally, Plaintiffs allege that Defendants were deliberately indifferent to Decedent's serious medical needs by failing to provide post-biopsy medical treatment when Decedent returned to his prison cell on January 23, 2010. (SAC ¶¶ 65-71.) According to Plaintiffs, Decedent's condition sharply declined when Decedent returned to his cell. (Id. ¶ 66.) Decedent began to vomit, his abdomen began to swell, he could not urinate and could not sleep. (Id. ¶¶ 66-69.) Does 17-50 allegedly ignored Decedent's requests for medical help. (Id.) On January 24, 2010, Decedent went "man down" and, less than two hours later, was transferred to the Operating Housing Unit in the prison. (Id. ¶¶ 69-70.) The following day, Decedent was transferred to the San Joaquin Medical Center where he was admitted for emergency treatment and diagnosed with hepatocellular carcinoma. (Id. ¶¶ 73-73.)

There are no facts in the SAC suggesting that any of the named Defendants were aware of Decedent's need for medical assistance upon Decedent's return to his prison cell on January 23, 2010. Plaintiffs' assertion that Defendant Benak "was responsible for monitoring [Decedent] after [Decedent] returned to prison from his January biopsy" does not plausibly suggest that Benak actually knew of Decedent's requests for medical assistance until Decedent went "man down" on January 24, 2010. As the Court explained earlier, a prison official is not liable under the Eighth Amendment for his part in allegedly denying necessary medical care unless he actually knew of a serious risk to inmate's health or safety." Farmer, 511 U.S. at 837 (1994). It is not enough that an official should have been aware of the risk. Gibson, 290 F.3d at 1188. Thus, Plaintiffs have failed to adequately allege that Benak or any other named Defendant knew of Decedent's medical needs on January 23, 2010.

///

Plaintiffs also argue that Benak was deliberately indifferent to Decedent's serious medical needs when he "made a decision to delay [Decedent's] transport to a hospital until the following day." (Pls' Opp. to MTD [ECF No. 62-1], at 10.) As the Ninth Circuit explained, "[a] prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986). The SAC is silent as to whether Decedent received any medical treatment while at the Operating Housing Unit, from Defendant Benak or any other SCC medical personnel, before Decedent was transferred to the San Joaquin Medical Center on January 24, 2010. Therefore, Plaintiffs have failed to state a viable deliberate indifference claim against any named Defendants with respect to Decedent's post-biopsy care.

As to Plaintiffs' allegations that Does 17-50 ignored Decedent's requests for medical help on January 23, 2010, (see SAC ¶¶ 66-69), the Court sua sponte finds these allegations insufficient to state a claim for deliberate indifference.[7] As alleged in the SAC, the prison guards received a clear notice of Decedent's need for immediate medical attention when Decedent went "man-down" at 3:15 p.m. on January 24, 2010. (Id. ¶¶ 32, 70.) Less than two hours later, at around 5 p.m., Decedent was transferred to the Operating Housing Unit on a gurney. (Id. ¶ 70). A delay of less than two hours usually does not amount to a constitutional deprivation. See Cramer v. Target Corp., 2011 WL 5873401, at *17 (E.D. Cal. Nov. 22, 2011) (noting that delays of longer than two hours are frequently experienced in emergency rooms across the country and that such delays do not rise to the level of a constitutional violation).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' first claim for relief. Plaintiffs are given final leave to amend for this cause of action.

---

[7] "The court has the authority to dismiss the Doe defendants sua sponte." Urias v. Quiroz, 895 F. Supp. 262, 264 (S.D. Cal. 1995) (citing Gillespie v. Civiletti, 629 F.2d 637, 642-43 (9th Cir. 1980)); see also Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim, but the court must give notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a written memorandum in opposition of such motion.'").

### B. Fifth Claim for Relief: Denial of Rights under the Eighth and Fourteenth Amendment against Does 1-2

The Court <u>sua sponte</u> analyzes the sufficiency of Plaintiffs' fifth claim for relief because, after the dismissal of Plaintiff's first claim, the fifth claim is the only basis for the Court's exercise of federal jurisdiction, and because no defendant can move to dismiss this claim as it is brought only against Doe Defendants.  <u>See</u> <u>Wong</u>, 642 F.2d at 361-62; <u>Urias</u>, 895 F. Supp. at 264.

Plaintiffs allege that Defendants correctional officers Does 1-2 were deliberately indifferent to Decedent's serious medical needs when they transferred Decedent from his MDH hospital bed back to SCC, thus depriving Decedent of the necessary rest after the biopsy procedure.  (SAC ¶ 107.)  According to Plaintiffs, the applicable medical standard of care prescribes that a patient should be placed to rest for three to four hours immediately after the operation.  (<u>Id.</u> ¶ 59.)  Yet, correctional officers Does 1-2 compelled Decedent to leave his hospital bed after less than an hour.  (<u>Id.</u> ¶ 61.)

By its previous Order, the Court dismissed Plaintiffs' fifth claim for relief for Plaintiffs' failure to demonstrate that Defendants Doe 1 and Doe 2 knew about the medical standard prescribing a three-hour post-biopsy rest period or that they were aware of the "excessive" risk to Decedent's health associated with transporting him to SCC after less than an hour of rest.  Plaintiffs have failed to cure this deficiency in the SAC.  Instead, Plaintiffs included an assertion that Decedent was aware of the alleged three-hour rule because his physician instructed Defendant Doe 3 to follow the accepted protocol and because Decedent had undergone biopsy procedures in the past.  (<u>Id.</u> ¶ 60.)  The fact that Decedent, Decedent's treating physician, and Defendant Doe 3 were aware of the prescribed three-hour rest period does not demonstrate that Does 1 and 2 were similarly familiar with this medical protocol.

///

///

Because the "deliberate indifference" standard is not satisfied unless a plaintiff can plausibly demonstrate that the defendant knew of the excessive risk to the prisoner's health, see Farmer, 511 U.S. at 837, Plaintiffs' fifth claim for relief against Defendants Doe 1 and Doe 2 fails.[8]

The Court has serious doubts that Plaintiffs will be able to state any plausible claim against Does 1 and 2 if Plaintiffs choose to amend their complaint. However, in light of the liberal standard for granting leave to amend, the Court will give Plaintiffs one last opportunity to state a viable claim. Accordingly, the Court dismisses Plaintiffs' fifth claim for relief with final leave to amend.

### C. State-Law Claims

Having found that both of Plaintiffs' federal claims fail under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismisses those claims with leave to amend. 28 U.S.C. § 1367(c).

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' First claim for relief is GRANTED with leave to amend. The Court dismisses Plaintiffs' Fifth claim for relief sua sponte with leave to amend. Having dismissed Plaintiffs federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims at this time. 28 U.S.C. § 1367(c). Plaintiffs are directed to file an amended complaint, should they choose to do so, within twenty (20) days of this Order.

---

[8] Even if Plaintiffs pleaded facts demonstrating that Defendants Doe 1 and Doe 2 actually knew of the alleged three-hour rest rule, it is doubtful that those Defendants' decision to transport Decedent back to the hospital after "less than an hour" of rest would amount to deliberate indifference to Decedent's serious medical needs. Because deliberate indifference is a "high legal standard," Toguchi, 391 F.3d at 1060, isolated incidents of neglect, like the one alleged by Plaintiffs in their fifth claim for relief, do not constitute deliberate indifference.

Case 2:11-cv-00414-MCE-KJN   Document 67   Filed 10/17/12   Page 19 of 19

1  If no amended complaint is filed within said twenty (20) days, this action will be
2  dismissed without leave to amend without any further notice from the Court, and the
3  Clerk of the Court will be directed to close the file.
4      IT IS SO ORDERED.
5  Dated: October 16, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE
19