1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

11   LINNIE STAGGS, as administrator of the          No. 2:11-cv-00414-MCE-KJN
     ESTATE OF ROBERT E. STAGGS,
12   deceased, and MELISSA STAGGS,

13              Plaintiffs,

14        v.                                        **MEMORANDUM AND ORDER**

15   DOCTOR'S HOSPITAL OF MANTECA,
     INC., et al.,
16
                Defendants.
17

18

19        Plaintiffs Linnie Staggs, as administrator of the Estate of Robert E. Staggs, and

20   Melissa Staggs (collectively, "Plaintiffs") seek redress from defendant Doctor's Hospital

21   of Manteca, Inc. ("DHM"), and a number of individual defendants regarding the medical

22   treatment and subsequent death of Robert E. Staggs ("Decedent") while in custody at

23   the Sierra Conservation Center ("SCC").  Plaintiffs allege claims for violation of

24   Decedent's constitutional rights under the Eighth and Fourteenth Amendment to the

25   United States Constitution and a number of state law claims.  On March 28, 2012, and

26   then on October 16, 2012, this Court dismissed, with leave to amend, the two federal

27   claims asserted in Plaintiffs' prior pleadings and declined to exercise supplemental

28   jurisdiction over the remaining state-law claims.  (ECF Nos. 47, 67.)

1    Plaintiffs' operative Amended Third Amended Complaint[1] ("TAC"), filed on

2  January 24, 2013, like Plaintiffs' prior pleadings, asserts two federal claims under

3  42 U.S.C. § 1983 for violations of Decedent's Eighth Amendment rights (first and fifth

4  claims for relief) and five state-law claims: (1) violation of California Government Code

5  § 845.6 (second claim for relief); (2) negligence based on failure to diagnose and treat

6  Decedent's liver condition (third claim for relief); (3) violation of California Civil Code

7  § 52.1 (fourth claim for relief); (4) negligence based on failure to provide post-biopsy

8  recovery (sixth claim for relief); and (5) wrongful death (seventh claim for relief).  (ECF

9  No. 84.)  Presently before the Court are three motions to dismiss the TAC for failure to

10  state a claim pursuant to Federal Rule of Civil Procedure[2] 12(b)(6): (1) Motion to

11  Dismiss, filed by Defendants Curtis Allen, M.D., Edwin Bangi, M.D., Jonathan Benak,

12  P.A., John Krpan, D.O., and Jack St. Clair, M.D. (collectively, "SCC Defendants") (ECF

13  No. 76); (2) Motion to Dismiss filed by Defendants Mario P. Sattah, M.D., Lincoln Russin,

14  M.D., and James P. Owen, M.D. (ECF No. 72); and (3) Motion to Dismiss filed by

15  Defendant DHM (ECF No. 74)  For the reasons set forth below, the Court GRANTS the

16  Motion to Dismiss filed by SCC Defendants (ECF No. 76), dismisses Plaintiffs' federal

17  claims without leave to amend, and declines to exercise  supplemental jurisdiction over

18  the remaining state-law claims. [3]  In light of this ruling, the Court DENIES as moot the

19  Motions to Dismiss filed by Defendants Sattah, Russin, Owen and DHM.  (ECF Nos. 72,

20  74.)

21  ///

22  ///

23    [1] Plaintiffs' filed their original Third Amended Complaint on November 20, 2012.  (ECF No. 70.)
Subsequently, the parties entered into two stipulations clarifying portions of Plaintiffs' Third Amended
24  Complaint.  (ECF Nos. 73, 75.)  On December 20, 2012, the Court issued a minute order directing
Plaintiffs to file an Amended Third Amended Complaint, striking and clarifying the material as stipulated to
25  by the parties.  (ECF No. 77.)

26    [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
otherwise noted.
27

28    [3] Because oral argument will not be of material assistance, the Court ordered this matter
submitted on the briefing.  E.D. Cal. R. 230(g).

2

1

**BACKGROUND**[4]

2

3       Decedent had the Hepatitis C virus and a history of liver problems, including

4   cirrhosis.  In May 2009, while incarcerated at SCC, Decedent started experiencing

5   darkened urine, skin itching and sores across his body, and also developed a persistent

6   and intense abdominal pain.  In response to Decedents' complaints, the prison's medical

7   staff prescribed "routine painkillers" and allegedly failed to prescribe any medication or

8   otherwise treat Decedent's underlying liver decease.  (TAC ¶ 35.)  Decedent's relatives,

9   relying on "a simple internet search," warned Decedent that his symptoms pointed to

10   liver failure.  (Id. ¶ 36.)

11       In June 2009, Defendant Bangi administered a hepatic function panel blood test

12   which showed that Decedent had a rise in alpha-feto protein ("AFP"), AST, ALT, MCV

13   and MCH levels.  According to Plaintiffs, the tests showed an increase in AFP levels

14   from 11 to 35, while a normal range of AFP is expected to fall below 6.1ng/ml.  A rise in

15   AFP is allegedly suggestive of acute HCV serious liver decease or cirrhosis and

16   hepatocellular carcinoma ("HCC").  As alleged, Defendants Bangi and Krpan, healthcare

17   providers at SCC, "did not take [Decedent's] symptoms and test results seriously," and

18   failed to repeat the test or provide Decedent with adequate treatment.  (Id. ¶ 38.)

19       In July 2009, Defendant Bangi ordered an MRI of Decedent's liver, which was

20   conducted in August 2009 and which suggested a lesion.  On September 2, 2009,

21   Decedent again reported severe pain and was seen by an unidentified RN employed by

22   SCC.  The RN informed Defendant Krpan about Decedent's symptoms; however, the

23   RN's notes "reflect[ed] a suspicious and dismissive tone towards the authenticity of

24   [Decedent's] serious medical needs."  (Id. ¶ 41.)  SCC Defendants continued treating

25   Decedent with routine painkillers.

26   ///

27   _____

28       [4] The following facts are taken from Plaintiffs' Amended Third Amended Complaint, filed on
     January 24, 2012.  (ECF No. 84.)

1   On October 4, 2009, Decedent underwent another MRI, the results of which revealed no

2   evidence of a tumor as determined by Defendant Russin.  According to Plaintiffs, the

3   interpretation of the test's results was "negligent" and "below any arguable standard of

4   medical care."  (Id. ¶ 42.)

5          On December 8, 2009, Decedent submitted a "602" inmate appeal form

6   requesting medical care.  On December 21, 2009, Decedent received a response,

7   signed by Defendant St. Clair, returning Decedent's "602" appeal for "abuse of the

8   appeal procedure."  (Id. ¶ 45.)  On December 23, 2009, Decedent filed an appeal of

9   St. Clair's decision.  Decedent believed that the prison medical personnel were "angry

10  with him over his repeated pleas for help and the administrative complaints he had filed

11  regarding lack of medical treatment."  (Id. ¶ 46.)

12         On December 26, 2009, Decedent went "man-down," a condition that is designed

13  to draw immediate attention from the custodial and medical personnel at the prison.

14  Decedent was taken to the Sonora Regional Medical Center hospital where he

15  underwent emergency medical evaluation and had an ultrasound and a contrast CT

16  scan performed.  The test results revealed a 5 cm lesion in the right lobe of his liver and

17  other lesions throughout the liver.  Although these results are allegedly indicative of

18  HCC, Defendants did not report the possibility of HCC but, instead, focused on

19  metastatic cancer as the cause of Decedent's health problems.  According to Plaintiffs,

20  SCC Defendants should have repeated an AFP test to confirm Decedent's diagnosis.

21         On or about December 14-31, 2009, Defendant Krpan decided, and Defendants

22  St. Clair and Allen approved, that Decedent should undergo a liver biopsy on

23  January 14, 2010.  Plaintiffs allege that this decision was erroneous and an

24  "unnecessary measure" because (1) where cirrhosis is present, conducting a biopsy

25  when a lesion is suspected to be HCC creates a substantial risk that the tumor will

26  spread along the needle track; and (2) a liver biopsy, while a safe procedure in the

27  normal liver, is much more likely to cause bleeding in a cirrhotic liver.  (Id. ¶¶ 50-51.)

28  Two hospitals allegedly refused to perform the biopsy because of the associated risks.

1    According to Plaintiffs, Defendants DHM, Sattah, Krpan, Allen and St. Clair opted to do a

2    three-pass core liver biopsy rather than a fine needle aspirate of the lesion, despite the

3    three-pass biopsy's significant risk of bleeding.  Plaintiffs allege that Decedent's biopsy

4    likely caused the large drop in hemoglobin and the bloody ascites fluid, which

5    precipitated Decedent's subsequent complications and death.  As alleged, Defendants

6    should have conducted other non-life-threatening procedures, such as a guided fine

7    needle biopsy or another AFP test to confirm what cancer Decedent had, instead of

8    making him undergo the three-pass procedure.

9         On January 22, 2010, Decedent underwent biopsy at DHM.  Although the relevant

10   medical standard required Decedent to rest for three to four hours after the operation,

11   two correctional transportation officers, Does 1 and 2, allegedly compelled Decedent to

12   leave his hospital bed after less than an hour of rest.  According to Plaintiffs, the

13   transportation officers refused Decedent's request to lie down, forcing him to sit up in the

14   back seat of the vehicle, which caused Decedent being "abrasively tossed around"

15   during the ride to the prison.  (Id. ¶ 58.)  During the ride, Decedent started feeling a

16   severe and sharp pain in his abdomen, which he later described as a painful "swishing"

17   sensation.  (Id. ¶ 61.)

18        Upon arrival to SCC on January 22, Decedent was placed into the Operating

19   Housing Unit for the night and, on January 23, was moved back to his cell.  According to

20   Plaintiffs, no supervision, treatment, or medical care was provided to Decedent after he

21   returned to his cell.  Decedent's condition kept declining: his abdomen continued to

22   swell; he could no longer urinate, started vomiting, could not sleep and was in severe

23   pain.  He unsuccessfully tried to alert the SCC correctional and medical personnel about

24   his condition.

25        At around 3:15 p.m. on January 24, 2010, Decedent went "man-down."  At

26   5:00 p.m., he was transferred to the prison's Operating Housing Unit.  On January 25,

27   2010, Decedent was taken to the San Joaquin Medical Center for emergency treatment.

28   ///

1   On January 26, 2010, the results of Decedent's liver biopsy confirmed his HCC

2   diagnosis.  On February 4, 2010, Decedent was transferred to the California Medical

3   Facility in Vacaville where he died on February 12, 2010, of blood loss into his

4   peritoneum.  The blood loss was allegedly the result of Decedent's three-pass liver

5   biopsy.

6

7                                          **STANDARD**

8

9          On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

10   allegations of material fact must be accepted as true and construed in the light most

11   favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

12   (9th Cir. 1996).  The Court must also assume that "general allegations embrace those

13   specific facts that are necessary to support a claim."  Smith v. Pacific Props. & Dev.

14   Corp., 358 F.3d 1097, 1106 (9th Cir. 2004).  Rule 8(a)(2) "requires only 'a short and plain

15   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

16   defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'"

17   Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

18   355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss

19   does not require detailed factual allegations.  Id.  However, "a plaintiff's obligation to

20   provide the grounds of his entitlement to relief requires more than labels and

21   conclusions, and a formulaic recitation of the elements of a cause of action will not do."

22   Id.  (internal citations and quotations omitted).  A court is not required to accept as true a

23   "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678

24   (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to

25   raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5

26   Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.

27   2004) (stating that the pleading must contain something more than a "statement of facts

28   that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F. 3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

## ANALYSIS

Because the Court's jurisdiction over this action depends on the existence of a viable federal claim, the Court will address Plaintiffs' first and fifth claims for relief first.[5]

---

[5] The Court previously dismissed Plaintiffs' federal claims twice for failure to state a claim upon which relief can be granted.  (See ECF Nos. 47, 67.)  Plaintiffs' TAC, while rephrasing some previously pled allegations, does not contain any additional or different facts than Plaintiffs' prior pleadings.  Accordingly, the Court's analysis below is substantially similar to the analysis provided in the Court's October 16, 2012 Order.  (See ECF No. 67.)

1

2

   **A.      First Claim for Relief: Denial of Rights under the Eighth and
            Fourteenth Amendment Against Defendants Allen,[6] Bangi, Benak,
            Krpan and St. Clair**

3

4          Plaintiffs' first claim for relief arises under 42 U.S.C. § 1983.  The TAC alleges

5   that Defendants knew of Decedent's life-threatening medical condition and acted with

6   deliberate indifference in failing to provide appropriate medical care to Decedent.  (TAC

7   ¶¶ 76-82.)  SCC Defendants contend that Plaintiffs have failed to state a viable Eighth

8   Amendment claim under Section 1983 because Plaintiffs' allegations do not amount to

9   allegations of deliberate indifference but, at best, to a claim for negligence.  (ECF No. 76

10  at 7.)

11         Under Section 1983, an individual may sue "[e]very person, who, under color of

12  [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by

13  the Constitution and laws."  An individual may be liable for deprivation of constitutional

14  rights "within the meaning of section 1983 'if he does an affirmative act, participates in

15  another's affirmative acts, or omits to perform an act which he is legally required to do

16  that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County

17  Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).

18         In order to state an Eighth Amendment claim for inadequate medical care, "a

19  prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

20  indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

21  Plaintiff must plead sufficient facts to permit the Court to infer that (1) Plaintiff had a

22  "serious medical need," and that (2) individual Defendants were "deliberately indifferent"

23  to that need.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

24  ///

25  ///

26

27

28

---

[6] Plaintiffs have not explicitly named Allen as a defendant in their first claim for relief.  (See TAC ¶ 75.)  However, Plaintiffs' allegations pertaining to the first cause of action appear to be directed, inter alia, at Defendant Allen.  (See id. ¶ 81.)  SCC Defendants' Motion to Dismiss addresses Plaintiffs' allegations against Defendant Allen.  (See ECF No. 76 at 7-9.)  Therefore, the Court will treat Defendant Allen as a named defendant for the purposes of Plaintiffs' first cause of action.

1    A prisoner can satisfy the "serious medical need" prong by demonstrating that "failure to

2    treat [his] condition could result in further significant injury or the unnecessary and

3    wonton infliction of pain." Id. (internal citations and quotations omitted).  Defendants do

4    not dispute that Decedent had a serious medical need.

5           Thus, the issue for the Court is whether Plaintiffs have sufficiently alleged that

6    individual Defendants were deliberately indifferent to Decedent's serious medical need.

7    Under the deliberate indifference standard, individual Defendants are not liable under

8    the Eighth Amendment for their part in denying necessary medical care unless they

9    knew "of and disregard[ed] an excessive risk to inmate health or safety." Farmer v.

10   Brennan, 511 U.S. 825, 837 (1994); Gibson v. County of Washoe, Nev., 290 F.3d 1175,

11   1187-88 (9th Cir. 2002).  Deliberate indifference contains both an objective and

12   subjective component: "the official must both be aware of facts from which the inference

13   could be drawn that a substantial risk of serious harm exists, and he must also draw that

14   inference." Farmer, 511 U.S. at 837.  "If a person should have been aware of the risk,

15   but was not," then the standard of deliberate indifference is not satisfied "no matter how

16   severe the risk." Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914

17   (9th Cir. 2001)).  Plaintiffs "need not show that a prison official acted or failed to act

18   believing that harm actually would befall an inmate; it is enough that the official acted or

19   failed to act despite his knowledge of a substantial risk of serious harm." Farmer,

20   511 U.S. at 842.

21          "The indifference to medical needs must be substantial; a constitutional violation

22   is not established by negligence or 'an inadvertent failure to provide adequate medical

23   care.'" Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting Estelle,

24   429 U.S. at 105-06).  Generally, defendants are "deliberately indifferent to a prisoner's

25   serious medical needs when they deny, delay, or intentionally interfere with medical

26   treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lolli v. County of

27   Orange, 351 F.3d 410, 419 (9th Cir. 2003).

28   ///

9

1   However, "a complaint that a physician has been negligent in diagnosing or treating a

2   medical condition does not state a valid claim of medical mistreatment under the Eighth

3   Amendment.  Medical malpractice does not become a constitutional violation merely

4   because the victim is a prisoner." Estelle, 429 U.S. at 106.  Further, a mere delay in

5   receiving medical treatment, without more, does not constitute "deliberate indifference,"

6   unless the plaintiff can show that the delay caused serious harm to the plaintiff.  Wood v.

7   Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

8           Plaintiffs have failed to cure the deficiencies in their complaint, which were

9   emphasized by the Court's prior Orders.  Defendants' acts and omissions, as alleged in

10  the TAC, still do not rise to the level of deliberate indifference to Decedent's medical

11  needs.  This case does not present a situation where prison personnel completely failed

12  to treat Decedent or where the delay in the provision of medical care was so significant

13  as to constitute a constitutional deprivation.

14          First, Plaintiffs allege that Defendants St. Clair and Allen failed to "take necessary

15  action to remedy known life-threatening medical failures within CDCR, and [failed] to

16  implement even a minimally-adequate system for promptly transferring inmates with life-

17  threatening diseases and conditions to facilities that were able to treat these conditions".

18  (TAC ¶ 80.)  This broad allegation of system-wide constitutional deficiencies in providing

19  medical care to inmates appears to be based on supervisory roles of Defendants

20  St. Clair and Allen within CDCR.[7]

21          Government officials acting as supervisors may be liable pursuant to Section

22  1983 under certain circumstances.  "[W]hen a supervisor is found liable based on

23  deliberate indifference, the supervisor is being held liable for his or her own culpable

24  action or inaction, not held vicariously liable for the culpable action or inaction of his or

25  her subordinate." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

26          [7] Defendant Allen was the Chief Physician and Surgeon at SCC at the time of the alleged events
    and was responsible for the supervision and practices regarding the delivery of surgical and other services
27  to inmates at SCC.  (TAC ¶ 12.) Defendant St. Clair was the Chief Medical Officer at SCC at the time of
    the alleged events and was responsible for the supervision and practices regarding the delivery of health
28  care services to inmates at SCC.  (Id. ¶ 11.)

10

1   A defendant may be held liable as a supervisor under Section 1983 if there exists "either

2   (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient

3   causal connection between the supervisor's wrongful conduct and the constitutional

4   violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Starr, 652 F.3d at 1207.

5   The requisite causal connection between a supervisor's wrongful conduct and the

6   violation of the prisoner's Constitutional rights can be established in a number of ways.

7   The plaintiff may show that the supervisor set in motion a series of acts by others, or

8   knowingly refused to terminate a series of acts by others, which the supervisor knew or

9   reasonably should have known would cause others to inflict a constitutional injury.

10   Dubner v. City & County of S.F., 266 F. 3d 959, 968 (9th Cir. 2001); Larez v. City of L.A.,

11   946 F.2d 630, 646 (9th Cir. 1991).

12        Also, a supervisor's own culpable action or inaction in the training, supervision, or

13   control of his subordinates may establish supervisory liability.  Starr, 652 F.3d at 1208;

14   Larez, 946 F.2d at 646.  Finally, a supervisor's acquiescence in the alleged constitutional

15   deprivation, or conduct showing deliberate indifference toward the possibility that

16   efficient performance of the task may violate the rights of others, may establish the

17   requisite causal connection.  Starr, 652 F.3d at 1208; Menotti v. City of Seattle,

18   409 F. 3d 1113, 1149 (9th Cir. 2005).

19        Plaintiffs' allegation about "known life-threatening medical failures within CDCR,"

20   (see TAC ¶ 80), is an unsupported conclusory statement.  The TAC's "Statement of

21   Facts" section is limited to a description of Decedent's own experience of the alleged

22   medical mistreatment at SCC and is devoid of facts demonstrating any other "medical

23   failures" within CDCR.  Additionally, the TAC does not plausibly demonstrate that either

24   St. Clair or Allen knew of such system-wide constitutional deprivations and refused to

25   cure them, or that these defendants' own culpable action or inaction in the training,

26   supervision, or control of their subordinates was the cause of the alleged constitutional

27   deprivations, or that St. Clair and Allen personally acquiesced in the alleged

28   constitutional deprivations.

1    With respect to Defendants Bangi, Krpan, Allen and St. Clair, Plaintiffs allege that

2    those Defendants were aware of Decedent's life-threatening condition which "warranted

3    immediate transfer to another facility with the appropriate level of medical resources and

4    expertise," but failed "to provide the necessary level of care and treatment."  (Id. ¶ 85.)

5    Plaintiffs' sweeping assertions remain unsupported by the TAC's factual allegations and

6    do not meet the "high legal standard" of deliberate indifference to a prisoner's serious

7    medical needs.  See Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Contrary

8    to Plaintiffs' allegations, the TAC actually suggests that the aforementioned Defendants

9    provided medical treatment to Decedent, albeit not the one Plaintiffs would have

10   preferred.

11       As alleged, Decedent started experiencing symptoms of liver decease in May

12   2009.  (TAC ¶ 30.)  Shortly thereafter, in June 2009, Defendant Bangi administered a

13   hepatic function panel blood test which showed that Decedent had elevated AFP, AST,

14   ALT, MCV and MCH levels.  (Id. ¶ 37.)  According to Plaintiffs, Defendants Bangi and

15   Krpan acted with deliberate indifference to Decedent's serious medical needs when they

16   failed to repeat the AFP test although "a rise in AFP is suggestive of acute HCV serious

17   liver disease or cirrhosis and HCC."  (Id. ¶¶ 37-38.)  However, Defendants' failure to

18   repeat a certain medical test does not amount to deliberate indifference to a prisoner's

19   medical needs.  See Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray,

20   or like measures, does not represent cruel and unusual punishment.").

21       Further, as demonstrated by the TAC, Defendants did conduct additional tests to

22   diagnose Decedent's medical condition.  In particular, a month after the AFP test, in July

23   2009, SCC's medical personnel ordered an MRI test which was performed on August 30,

24   2009.  (TAC ¶ 40.)  One month later, on October 4, 2009, Decedent underwent a

25   contrast MRI test performed by an outside hospital.  (Id. ¶ 42.)  In the interim, Defendant

26   was seen and evaluated by SCC's medical personnel.  (Id. ¶ 41.)  The TAC also

27   demonstrates that Decedent was continuously prescribed medication to treat his pain

28   and the outward symptoms of his itching and sores.  (Id. ¶ 35, 36, 38, 40.)

1  Plaintiffs contend that SCC Defendants' decision to treat Decedent with painkillers,

2  instead of medication for liver disease treatment, demonstrates deliberate indifference to

3  Decedent's serious medical needs.  (Id. ¶ 38.)  However, nothing in the TAC plausibly

4  demonstrates that Defendants Krpan, Allen, Bangi or any other members of SCC's

5  medical staff knew that Decedent was suffering from a serious liver disease during the

6  relevant time period.[8]  On the contrary, as Plaintiffs themselves allege, a second MRI

7  test, which Decedent underwent on October 4, 2009, showed "no evidence of tumor."

8  (Id. ¶ 42.)

9       Plaintiffs contend that the results of the October 2009 MRI test were erroneous.

10  (Id.)  Plaintiffs' contention here does not bear on the merits of their constitutional claim

11  against the medical personnel at SCC because the MRI test was performed at an

12  outside hospital, Mark Twain St. Joseph Hospital in San Andreas, California.  (Id.)  What

13  Plaintiffs' allegation here demonstrates, however, is that SCC's medical personnel did

14  address Decedent's medical concerns by transferring Decedent to an outside medical

15  facility for necessary testing and evaluation.  The fact that Plaintiffs are dissatisfied with

16  the medical services provided to Decedent by an outside healthcare provider does not

17  make SCC's medical personnel deliberately indifferent to Decedent's medical needs.

18       The TAC further states that, on December 26, 2010, Decedent went "man-down"

19  because "he could no longer endure the pain."  (Id. ¶ 47.)  The same day, Decedent was

20  taken to the Sonora Regional Medical Center Hospital, where he was evaluated by

21  medical personnel and underwent medical testing and evaluation (including an

22  ultrasound and a contrast CT scan), which reported a 5 cm lesion in the right lobe of

23  Decedent's liver and other lesions throughout the liver.  (Id. ¶¶ 47-48.)  This allegation

24  again demonstrates that Defendants promptly responded to Decedent's medical needs

25  by immediately transferring Decedent to an outside hospital for emergency treatment

26  and medical testing.

27

28       [8] In fact, Decedent was not diagnosed with hepatocellular carcinoma until January 26, 2010. (TAC ¶ 70.)

13

1    Further, in December 2009, Defendant Krpan, with approval from Defendants St. Clair

2    and Allen, secured and scheduled Decedent's liver biopsy at another outside medical

3    facility, Doctor's Hospital of Manteca.  (Id. ¶ 50.)  Decedent underwent the biopsy less

4    than a month later.  (Id. ¶ 55.)  As this Court explained in its previous Orders, approval of

5    Decedent's biopsy by Defendants Krpan, St. Clair and Allen demonstrates the opposite

6    of "denial, delay or intentional interference" with Decedent's medical treatment, as

7    required to state a cognizable claim based on deliberate indifference.  See Hallett,

8    296 F.3d at 744; Lolli, 351 F.3d at 419.

9         Plaintiffs, however, dispute the appropriateness of the medical treatment chosen

10   by the SCC Defendants for Decedent.  In particular, Plaintiffs contend that Defendants

11   were deliberately indifferent to Decedent's serious medical needs when, after receiving

12   the results of Decedent's medical tests, they focused on metastatic cancer as the cause

13   of Decedent's medical symptoms and failed to conduct another AFP test to confirm what

14   type of cancer Decedent was suffering from.  (TAC ¶ 48.)  Plaintiffs further allege that

15   Decedent's liver biopsy was "an unnecessary diagnostic measure" with substantial risks

16   and that Defendants should have used other "non-life-threatening procedures."  (Id.

17   ¶ 51.)  Additionally, Plaintiffs disagree with Defendants' decision to opt for a three-pass

18   core liver biopsy rather than a fine needle aspirate of the lesion, because the three-pass

19   procedure allegedly creates a much greater risk of bleeding.  (Id. ¶ 53.)  In support of

20   their allegations of deliberate indifference, Plaintiffs rely on the fact that two hospitals

21   refused to perform the biopsy prescribed by Defendant Krpan because of the associated

22   risks.  (Id. ¶ 52.)  As the Court previously emphasized, a difference of medical opinion

23   over the proper course of medical treatment does not constitute deliberate indifference.

24   Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004); see also Snow v. McDaniel,

25   681 F.3d 978, 986 (9th Cir. 2012) ("A difference of opinion between a physician and the

26   prisoner-or between medical professionals-concerning what medical care is appropriate

27   does not amount to deliberate indifference.").

28   ///

1   Plaintiffs' allegations in the TAC amount to nothing more than a difference of medical

2   opinion and, at best, suggest medical malpractice which is not sufficient to state a claim

3   for a constitutional violation under the Eighth Amendment.  See Estelle, 429 U.S. at 106.

4          Finally, Plaintiffs allege that Defendants were deliberately indifferent to

5   Decedent's serious medical needs by failing to provide post-biopsy medical treatment

6   when Decedent returned to his prison cell on January 23, 2010.  (TAC ¶¶ 62-69.)

7   However, there are no facts in the TAC suggesting that any of the named Defendants

8   were aware of Decedent's need for medical assistance upon Decedent's return to his

9   prison cell on January 23, 2010.  Plaintiffs' assertion that Defendant Benak "was

10  responsible for monitoring [Decedent] after [Decedent] returned to prison from his

11  January biopsy" does not plausibly suggest that Benak actually knew of Decedent's

12  requests for medical assistance until Decedent went "man down" on January 24, 2010.

13  In fact, Plaintiffs' first cause of action, as pled in the TAC, does not mention any

14  wrongdoing attributed to Benak.  As the Court explained earlier, a prison official is not

15  liable under the Eighth Amendment for his part in allegedly denying necessary medical

16  care unless he actually knew of a serious risk to inmate's health or safety.  Farmer,

17  511 U.S. at 837 (1994).  It is not enough that an official should have been aware of the

18  risk.  Gibson, 290 F.3d at 1188.  Because Plaintiffs failed to adequately allege that

19  Benak or any other named Defendant knew of Decedent's medical needs on January

20  23, 2010, their deliberate indifference claim against those Defendants fails as a matter of

21  law.

22         As to Plaintiffs' allegations that Doe Defendants ignored Decedent's requests for

23  medical help on January 23, 2010, (see TAC ¶¶ 64-65), the Court sua sponte finds these

24  allegations insufficient to state a claim for deliberate indifference.[9]

25

26         [9] "The court has the authority to dismiss the Doe defendants sua sponte."  Urias v. Quiroz,
    895 F. Supp. 262, 264 (S.D. Cal. 1995) (citing Gillespie v. Civiletti, 629 F.2d 637, 642-43 (9th Cir. 1980));
27  see also Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981) ("A trial court may act on its own initiative to
    note the inadequacy of a complaint and dismiss it for failure to state a claim, but the court must give notice
    of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a
28  written memorandum in opposition of such motion.'").

1    As alleged in the TAC, the prison guards transferred Decedent to the Operating Housing

2    Unit on a gurney less than two hours after Decedent went "man-down" on January 24,

3    2010.  (Id. ¶ 67.)  A delay of less than two hours usually does not amount to a

4    constitutional deprivation.  See Cramer v. Target Corp., 2011 WL 5873401, at *17 (E.D.

5    Cal. Nov. 22, 2011) (noting that delays of longer than two hours are frequently

6    experienced in emergency rooms across the country and that such delays do not rise to

7    the level of a constitutional violation).

8         In sum, the Court finds that Plaintiffs have failed to state a viable Section 1983

9    claim for relief against any SCC Defendant and accordingly grants SCC Defendants'

10   motion to dismiss Plaintiffs' first cause of action.  Plaintiffs have been afforded two

11   opportunities to rectify the deficiencies in their pleading but have failed to do so.  The

12   Court concludes that any further leave to amend would be futile and dismisses Plaintiffs'

13   first cause of action without leave to amend.

14

15         **B.      Fifth Claim for Relief: Denial of Rights under the Eighth and
              Fourteenth Amendment against Does 1-2**

16

17        Plaintiffs allege that Defendants correctional officers Does 1 and 2 were

18   deliberately indifferent to Decedent's serious medical needs when they transferred

19   Decedent from his DHM hospital bed back to SCC, thus depriving Decedent of the

20   necessary rest after the biopsy procedure.  (TAC ¶ 103.)  According to Plaintiffs, the

21   applicable medical standard of care prescribes that a patient should be placed to rest for

22   three to four hours immediately after the operation.  (Id. ¶ 56.)  Yet, correctional officers

23   Does 1 and 2 compelled Decedent to leave his hospital bed after less than an hour.  (Id.

24   ¶ 58.)

25   ///

26   ///

27   ///

28   ///

By its previous Orders, the Court dismissed the fifth cause of action for Plaintiffs' failure to demonstrate that Defendants Doe 1 and Doe 2 knew about the medical standard prescribing a three-hour post-biopsy rest period or that they were aware of the "excessive" risk to Decedent's health associated with transporting him to SCC after less than an hour of rest.  Plaintiffs have again failed to cure this deficiency in the TAC.  Instead, Plaintiffs allege that Decedent was aware of the alleged three-hour rule because his physician instructed Defendant Doe 3 to follow the accepted protocol and because Decedent had undergone biopsy procedures in the past.  (Id. ¶ 57.)  The fact that Decedent, Decedent's treating physician, and Defendant Doe 3 were aware of the prescribed three-hour rest period does not demonstrate that Does 1 and 2 were similarly familiar with this medical protocol.  Because the "deliberate indifference" standard is not satisfied unless a plaintiff can plausibly demonstrate that the defendant knew of the excessive risk to the prisoner's health, see Farmer, 511 U.S. at 837, Plaintiffs' fifth claim for relief against Defendants Doe 1 and Doe 2 fails as a matter of law.[10]

Because it is clear to the Court that Plaintiffs cannot state a viable claim for a constitutional violation against Defendants Doe 1 and Doe 2, the Court grants SCC Defendants' Motion to Dismiss Plaintiffs' fifth cause of action and dismisses this claim without leave to amend.

## C.    State-Law Claims

Having found that both of Plaintiffs' federal claims fail under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismisses those claims without prejudice.  28 U.S.C. § 1367(c).

---

[10] Even if Plaintiffs pleaded facts demonstrating that Defendants Doe 1 and Doe 2 actually knew of the alleged three-hour rest rule, it is doubtful that those Defendants' decision to transport Decedent back to the hospital after "less than an hour" of rest would amount to deliberate indifference to Decedent's serious medical needs.  Because deliberate indifference is a "high legal standard," Toguchi, 391 F.3d at 1060, isolated incidents of neglect, like the one alleged by Plaintiffs in their fifth claim for relief, do not constitute deliberate indifference.

1   Because only Plaintiffs' state-law claims are subject of the Motions to Dismiss filed by

2   Defendants Sattah, Russin, Owen, and DHM, the Court denies those Motions as moot.

3

4                                          **CONCLUSION**

5

6          For the reasons stated above, it is hereby ordered that:

7          1.     The Motion to Dismiss filed by Defendants Allen, Bangi, Benak, Krpan and

8   St. Clair (ECF No. 76) is GRANTED with respect to Plaintiffs' FIRST and FIFTH claims

9   for relief without leave to amend.

10         2.     Having dismissed Plaintiffs federal claims, the Court declines to exercise

11  supplemental jurisdiction over Plaintiffs' remaining state-law claims and dismisses those

12  claims without prejudice.

13         3.     The Court DENIES as moot the Motion to Dismiss filed by Defendants

14  Sattah, Russin and Owen (ECF No. 72) and the Motion to Dismiss filed by Defendant

15  Doctor's Hospital of Manteca (ECF No. 74).

16         4.     The Clerk of the Court is directed to close this case.

17         IT IS SO ORDERED.

18  DATED:  April 25, 2013

19

20  _____

21  MORRISON C. ENGLAND, JR., CHIEF JUDGE
    UNITED STATES DISTRICT COURT

22

23

24

25

26

27

28

18