1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   LINNIE STAGGS, individually and as          No.  2:11-cv-00414-MCE-KJN
     Administrator of the Estate of Robert E.
12   Staggs, and MELISSA STAGGS,

13                 Plaintiffs,                    **MEMORANDUM AND ORDER**

14        v.

15   DOCTORS HOSPITAL OF MANTECA,
     INC., et al.,
16
                   Defendants.
17

18

19        By way of the present action, Plaintiff Linnie Staggs, individually and as the

20   Administrator of the Estate of Robert E. Staggs ("Decedent"), and Plaintiff Melissa

21   Staggs (collectively "Plaintiffs"), seek redress from, <u>inter alia,</u> Defendants Jack St. Clair,

22   M.D.; Curtis Allen, M.D.; Lincoln Russin, M.D.; Edwin Bangi, M.D.; John Krpan, D.O.;

23   Mario P. Sattah, M.D.; Doctors Hospital of Manteca ("DHM"); and various Doe

24   Defendants (collectively "Defendants") stemming from Defendants' medical treatment of

25   Decedent during his incarceration at Sierra Conservation Center ("SCC").  Plaintiffs raise

26   eight claims for relief, including inadequate medical care allegedly violating the Eighth

27   Amendment's prohibition of cruel and unusual punishment; failure to summon and

28   provide medical care in violation of Cal. Gov. Code § 845.6; negligence; deliberate

                                              1

indifference in conducting a liver biopsy; violation of rights by threats, intimidation, or coercion in violation of Cal. Civ. Code § 52.1; inadequate post-biopsy recovery; and wrongful death and loss of companionship arising out of Decedent's passing.

Presently before the Court are Plaintiffs' Motion for Partial Summary Judgment, ECF No. 188, and Defendants' Motion for Summary Judgment, ECF No. 182.[1]  For the reasons that follow, Plaintiffs' Motion is GRANTED and Defendants' Motion is GRANTED with respect to the sixth cause of action, and otherwise DENIED.[2]

## BACKGROUND[3]

Decedent Robert Staggs began his prison term at SCC on January 8, 2004.  He was diagnosed with Hepatitis C virus ("HCV") in 1980 and began to experience worsening symptoms associated with his HCV diagnosis in May 2009, during his prison term.  These worsening symptoms included pruritus, darkened urine, and open sores. Plaintiffs allege that these symptoms were so extreme that they gave Decedent insomnia and interfered with his ability to participate in regular daily activities.  According to Plaintiffs, Decedent's symptoms clearly pointed to acute liver failure, but Defendants only gave him pain medication and other treatments intended to mask the symptoms instead of properly diagnosing and addressing the underlying problems.  In June 2009, Defendant Bangi, one of the SCC doctors, administered a blood test to Decedent that showed an increase in Decedent's alpha-feta protein ("AFP") level from 11 to 35, while a normal value is between zero and eight.  Following this result, Defendants continued to

---

[1] Plaintiffs also filed a Motion to Strike Defendants' Joint Reply to Separate Statement of Undisputed Facts, or in the alternative, a proposed Surreply.  ECF No. 200.  Plaintiffs' Motion to Strike is DENIED, and the Court has instead considered Plaintiffs' filed Surreply.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230.

[3] The following facts are derived from the parties' respective briefing, statements of disputed and undisputed facts, and Plaintiffs' Complaint.  They are construed in Plaintiffs' favor as the party opposing summary judgment.

give Decedent only painkillers and did not repeat the AFP test or give him further treatment at that time. In July 2009, Defendant Bangi ordered an MRI of Decedent's liver, and the test was administered on August 30 of that year, showing a possible lesion in his liver.

On December 8, 2009, Decedent submitted a 602 inmate appeal form to the SCC Healthcare Appeals Office requesting medical attention for his symptoms. He received a denial of his request on December 21, 2009, which he appealed two days later. On December 26, 2009, Decedent went "man-down" in his cell, and was taken to the Sonora Regional Medical Center hospital where he received an ultrasound and a CT scan. Both tests indicated cirrhosis and several lesions in Decedent's liver, including one five-centimeter lesion. In January 2010, Defendants St. Clair and Allen scheduled a biopsy of Decedent's liver that Defendant Bangi had originally ordered in October 2009. After two hospitals refused to perform the biopsy on Decedent because of the high risks involved in biopsying a liver like Decedent's with ascites fluid in the peritoneal cavity, DHM agreed to administer the procedure. Plaintiffs assert that Decedent was at a higher risk for acute liver bleeding because of his condition.

Decedent's liver biopsy was performed at DHM on January 22, 2010. Plaintiffs' expert opined that the "universal protocol" for liver biopsies requires the patient to "remain immobile in a supine position" for "three to four hours immediately following the procedure" to help stop internal bleeding, even if the liver is otherwise healthy. However, it is undisputed that Defendants forced Decedent to leave his hospital bed less than an hour after the biopsy so he could be transported back to SCC. The next day, Decedent was unable to urinate, his abdomen became swollen and distended, and he soon began to vomit. No prison personnel came to Decedent's aid until the afternoon of the following day, January 24, 2010. At that point, Decedent was transferred to the Operating Housing Unit at SCC, and on January 25, 2010, he was taken to the San Joaquin Medical Center for emergency treatment. His biopsy results were returned the next day and confirmed hepatocellular carcinoma. Decedent was transferred to the California

Medical Facility in Vacaville on February 4, 2010, where he died on February 12, 2010. Plaintiffs' expert opined that the immediate cause of Decedent's death was "blood loss into his peritoneum" resulting from the liver biopsy performed on January 22, 2010. His official causes of death on his death certificate were hepatocellular carcinoma and end stage liver disease.

With regard to the facts described above, Plaintiffs allege the following action or inaction by each named Defendant:

- Dr. St. Clair: screened out Decedent's 602 inmate appeal for "abuse of the appeal procedure"; approved Decedent's liver biopsy despite knowing about Decedent's high risk for complications; failed to cause Decedent to be included in the HCV screening program and failed to cause him to be referred to a specialist despite HCV treatment protocols.

- Dr. Bangi: prescribed Decedent painkillers to mask his symptoms instead of treating his liver disease; scheduled Decedent's liver biopsy despite knowing about Decedent's high risk for complications.

- Dr. Allen: approved Decedent's liver biopsy despite knowing about Decedent's high risk for complications; failed to cause Decedent to be referred to a specialist.

- Dr. Russin: administered Decedent's October 2009 MRI scan and failed to diagnose a tumor based on that test; failed to administer a multiphase MRI that would have revealed Decedent's hepatocellular carcinoma.

- Dr. Krpan: prescribed Decedent painkillers to mask his symptoms instead of treating his liver disease; ordered Decedent's liver biopsy despite knowledge of Decedent's heightened risk for complications.

- Dr. Sattah: administered Decedent's liver biopsy despite knowledge of Decedent's heightened risk for complications; performed the biopsy in a way that further increased risk to Decedent.

///

- Doctor's Hospital of Manteca: under a theory of respondeat superior for Sattah's conduct, performed Decedent's liver biopsy and discharged Decedent from the hospital too soon after the procedure was completed.

Plaintiffs' first cause of action alleges that Defendants St. Clair, Bangi, Krpan, Allen, and certain Doe Defendants violated Decedent's constitutional rights by providing him such inferior medical treatment that it constituted cruel and unusual punishment in violation of the Eighth Amendment. ECF No. 117. Plaintiffs' second claim for relief alleges that certain Doe Defendants failed to summon and provide proper medical care for Decedent in violation of Cal. Gov. Code § 845.6. Plaintiffs' third claim for relief alleges negligence against Defendants Krpan, Bangi, Russin, Sattah, DHM, and Doe Defendants, claiming they violated the standard of care by failing to provide adequate testing and treatment of Decedent's medical condition. In their fourth claim, Plaintiffs allege deliberate indifference against Defendants Krpan, Allen, St. Clair, Sattah, Bangi, DHM, and other Doe Defendants in their decision to conduct a liver biopsy on Decedent. Plaintiffs' fifth claim for relief alleges that Doe Defendants utilized threats, intimidation, and coercion against Decedent in violation of Cal. Civ. Code § 52.1 to force him to leave his hospital bed after the biopsy. Plaintiffs' sixth claim for relief alleges deliberate indifference against Defendants DHM, Sattah, and other Does arising from their release of Decedent from the hospital less than one hour after his liver biopsy. In the seventh claim for relief, Plaintiff Melissa Staggs, Decedent's daughter, alleges wrongful death under Code Civ. Pro. § 377.60. In the eighth claim for relief, Plaintiffs Linnie Staggs and Melissa Staggs, Decedent's mother and daughter, respectively, allege loss of companionship.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. <u>Celotex</u>, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. <u>See</u> Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 56(a); <u>State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby,</u>

Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.    Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for partial summary judgment with regard to Defendants' affirmative defense that Plaintiffs did not exhaust administrative remedies prior to filing the present suit, as required under the Prison Litigation Reform Act ("PLRA"). Plaintiffs

argue that the exhaustion requirement does not apply to them because they are not prisoners themselves but rather are family members of a deceased prisoner. ECF No. 188. Defendants filed a Notice of Non-Opposition to Plaintiffs' Motion. ECF No. 195.

The PLRA requires that a prisoner exhaust his or her administrative remedies before bringing a claim under § 1983. 42 U.S.C.A. § 1997e(a). However, the PLRA does not require family members or a deceased prisoner's estate to exhaust these administrative remedies before bringing a § 1983 action on behalf of the deceased prisoner. Rather, it only places that requirement on an action brought "by a prisoner confined in any jail, prison, or other correctional facility." Id. Other courts interpreting the statute have reached the same conclusion, finding that, for example, the PLRA's exhaustion requirement does not apply to the mother or the estate of a prisoner. Torres Rios v. Pereira Castillo, 545 F. Supp. 2d 204 (D. Puerto Rico, Aug. 28, 2007). Moreover, a deceased prisoner's failure to exhaust administrative remedies before his death does not preclude others from filing a § 1983 action on his behalf. Anderson v. County of Salem, 2010 WL 3081070, at *2 (D. New Jersey Aug. 5, 2010) ("Defendants' argument that Plaintiff's federal claims cannot proceed because [decedent] failed to exhaust his administrative remedies…lacks merit….His death prevented him from doing so."). Plaintiffs in this case are the deceased prisoner's mother, sister, and estate. In light of the clear case law and Defendants' statement of non-opposition, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**B.    Defendants' Motion for Summary Judgment**

In their Corrected Fourth Amended Complaint, Plaintiffs allege various violations against fifteen separate defendants, eight of whom are specifically named, and seven of whom consist of groups of Doe Defendants. Defendants' present Motion for Summary Judgment addresses summary judgment by party, rather than by claim, and the Court takes the same approach here, after first addressing Defendants' qualified immunity arguments.

### 1. Qualified Immunity[4]

To bring a § 1983 action, a plaintiff must show that the defendant was acting "under color of any [law]" at the time of the alleged civil rights violation. 42 U.S.C. § 1983. This generally requires that the plaintiff show the defendant has committed the alleged violation "while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 50 (1988). However, "[g]overnmental officials performing discretionary functions generally are shielded from liability in their individual capacities if the challenged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Romo v. Cate, Case No. 2:11-cv-2898 DAD P, 2014 WL 4276071, at *6.

When determining whether a finding of qualified immunity is appropriate at the summary judgment stage, a court must consider "whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment . . . . [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001) (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)). This is "a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" Id. at 910 (internal citation omitted). At bottom, "the relevant, dispositive inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In the context of summary judgment of an Eighth Amendment deliberate indifference claim, Plaintiffs must show that a reasonable officer—knowing what each officer here is alleged to have known—would "have perceived an excessive risk of serious harm" such that his actions were constitutionally impermissible. Jennings v. Moreland, Case No. 2:08-cv-01305 LKK

---

[4] Plaintiffs make no § 1983 claim against Defendant Russin, so he is not included in this analysis. Further, the Ninth Circuit has provided that corporations and other such entities are not entitled to qualified immunity from § 1983 actions, see Sellers v. Regents of University of Cal., 432 F.2d 493, 500 (9th Cir. 1970) ("[A] corporation…is not a 'person' within the meaning of 42 U.S.C. § 1983."), so Defendant DHM is also excluded from this analysis.

1   CKD P, 2013 WL 4049532, at *5 (internal citation omitted); Estate of Ford v. Ramirez-
2   Palmer, 301 F. 3d 1043, 1051-53.

3        First, construing the facts presented in the light most favorable to Plaintiffs,
4   Defendants' conduct would violate a constitutional right.  Specifically, Defendants
5   St. Clair, Allen, and Krpan were all somehow involved in approving Decedent's liver
6   biopsy, despite allegedly knowing of Decedent's heightened risk for complications and
7   the fact that two hospitals had already refused to perform the procedure because of that
8   heightened risk.  According to Plaintiffs, Defendants Bangi and Krpan both prescribed
9   Decedent painkillers to mask his symptoms instead of actually treating Decedent's liver
10  disease, and Defendant Bangi originally ordered Decedent's liver biopsy.  Defendant
11  Sattah personally administered Decedent's liver biopsy; according to Plaintiffs, this was
12  despite the fact that he had to have known—based on his experience and education—of
13  Decedent's special risk for complications.  He apparently also released Decedent from
14  the hospital prior to the standard recovery time.  And for their part, Plaintiffs complain,
15  Defendants St. Clair and Allen each could have referred Decedent to the appropriate
16  specialist but failed to do so despite protocols in place requiring referrals under
17  applicable circumstances.  If a jury believes Plaintiffs, these actions amount to deliberate
18  indifference to Decedent's medical needs, as alleged in Plaintiffs' claims one, four, and
19  six.

20       Next, the Court considers whether the right supposedly violated was clearly
21  established.  "[D]eliberate indifference to serious medical needs of prisoners constitutes
22  the 'unnecessary and wanton infliction of pain'…proscribed by the Eighth Amendment.
23  This is true whether the indifference is manifested by prison doctors in their response to
24  the prisoner's needs or by prison guards in intentionally denying or delaying access to
25  medical care . . . ." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (quoting Gregg v.
26  Georgia, 428 U.S. 153, 173 (1976)).  The law concerning deliberate indifference was
27  clearly defined at the time of the actions and inactions described above.
28  ///

Finally, whether a reasonable official in each of Defendants' shoes could have believed their conduct to be lawful is analyzed below for each group of defendants. For the following reasons, and taking all facts alleged as true at this point in the analysis, the Court finds that no Defendant is entitled to qualified immunity, and summary judgment of Plaintiffs' deliberate indifference claims based on qualified immunity is not appropriate.

### a.     Sierra Conservation Center Defendants

As set forth above, interpreting the facts in the light most favorable to Plaintiffs, the Court finds that a reasonable official knowing what the SCC Defendants (i.e., St. Clair, Allen, Bangi, and Krpan) are alleged to have known could not have believed their actions and inactions were lawful under the circumstances. Indeed, each of these Defendants was involved in scheduling Decedent's liver biopsy, despite all of them allegedly knowing that Decedent had liver complications making the procedure too dangerous to perform, as evidenced by the fact that two other hospitals refused to perform the test. Further, Defendants Bangi and Krpan both treated Decedent while at SCC, and both of them prescribed Decedent painkillers to mask his symptoms, rather than to treat his underlying liver disease. Defendants St. Clair and Allen each could have referred Decedent to the appropriate specialist but failed to do so despite protocols in place requiring referrals under applicable circumstances. If all facts are taken as true, a reasonable officer would not believe those actions were lawful, and the SCC Defendants are therefore not entitled to qualified immunity. Knowing what they purportedly knew, a reasonable officer in Defendants' shoes would have perceived the risk of death to the Decedent and would have known that risk was both excessive and serious. To the extent the SCC Defendants move for summary judgment based on qualified immunity, their motion is DENIED.

### b.     Defendant Sattah

Plaintiffs apparently assert a separate Eighth Amendment deliberate indifference claim against Sattah under § 1983, alleging that he was deliberately indifferent to Decedent's medical needs via his performance of the liver biopsy and premature release

of Decedent after the biopsy, in violation of Decedent's constitutional rights. Defendants contend first that Sattah was not a state actor subject to liability under § 1983 and, second, that even if he were, he is entitled to qualified immunity.

Sattah was employed by Central Valley Imaging ("CVI"), which contracted with DHM for his performance of Decedent's liver biopsy on January 22, 2010. Defendants argue that as a contracted employee, Sattah was not a state actor and therefore cannot be held liable under § 1983. But a "private doctor who provides medical services to inmates pursuant to a contract with the prison may be held liable in a civil rights suit." Hetzel v. Swartz, 909 F. Supp. 261, 264 (M.D. Pa. Dec. 18, 1995). Whether a private physician who contracted with the state to treat inmates is acting under color of state law is a fact-intensive inquiry. "[T]he fact that [a doctor's] employment contract did not require him to work exclusively for the prison [does not] make him any less a state actor than if he performed those duties as a full-time, permanent member of the state prison medical staff." Atkins, 487 U.S. at 56. Rather, it is "the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law." Id. There are several tests for determining whether an individual is a state actor, including the joint action and governmental nexus tests. Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997).

The joint action test is met if "private persons are willful participants in joint activity with the State or its agents that effects a constitutional deprivation." Id. at 1119. "An agreement between government and a private party can create state action." Id. Depending on the details of CVI's contract and the extent of Sattah's relationship with the State of California, he may satisfy this test and be considered a state actor. The nexus test, on the other hand, is satisfied if there is a "sufficiently close nexus between the State and the challenged action . . . so that the action . . . may be fairly treated as that of the State itself." Id. at 1119. Defendant Sattah may satisfy either the joint action test, the nexus test, or both, making him a state actor for purposes of § 1983.

Under the joint action test, a jury could find that Sattah was a "willful participant" with the State in the activity that violated Decedent's civil rights—the liver biopsy— because he was aware that Decedent was an inmate and that the California Department of Corrections and Rehabilitation had contracted with CVI for Defendant Sattah to administer the biopsy.  Similarly, under the nexus test, the relationship between Defendant Sattah and the State, wherein Defendant Sattah agreed to perform a medical procedure on an inmate, could be sufficient to warrant treating his performing the biopsy as an action of the State itself.  In any case, this determination is very fact-specific, and because questions of fact remain disputed, it is not appropriate for the Court to determine on a motion for summary judgment.

Assuming Defendant Sattah was a state actor, summary judgment on qualified immunity would also be inappropriate because—for the reasons described above in relation to the SCC Defendants—taking all facts alleged in the light most favorable to Plaintiffs, Sattah's actions in performing the risky liver biopsy violated Decedent's clearly established constitutional right.  Therefore, to the extent Defendant Sattah moves for summary judgment based on qualified immunity, the motion is DENIED.

## 2.    Defendants' Substantive MSJ Arguments

With one exception as to Plaintiffs' Sixth Cause of Action, a host of factual issues preclude the Court from granting Defendants' Motion based on the substance of Plaintiffs' arguments as well.

### a.    Defendant Jack St. Clair, M.D.

Plaintiffs assert their first and fourth claims for relief against Jack St. Clair, M.D., the Chief Medical Officer at SCC from 2009-2010.  According to Plaintiffs, St. Clair's treatment of Decedent fell far below the medical professional standard of care such that it constituted cruel and unusual punishment in violation of the Eighth Amendment.  More specifically, Plaintiffs base this argument on the fact that St. Clair personally signed the December 21, 2009, document from the SCC Healthcare Appeals Office, wherein he rejected Decedent's appeal for "abuse of the appeal procedure."  Further, St. Clair was

13

involved in approving the risky liver biopsy that is alleged to have ultimately caused Decedent's premature death.  Plaintiffs contend that St. Clair had knowledge of the special risk that Decedent's diseased liver presented, particularly given that two hospitals had already refused to perform the procedure for that reason.

The parties dispute whether St. Clair had knowledge of the increased risk of life threatening complications that the biopsy presented, given the state of Decedent's liver at the time, and whether his treatment of Decedent fell below the standard of care. Whether the standard of care was met in a medical malpractice case is a question of fact that is not properly resolved by the Court on summary judgment.  See <u>Morales</u>, 723 F. Supp. 2d at 423.  Indeed, here there are questions of fact surrounding the extent of St. Claire's knowledge and whether his conduct fell so far below the standard of care that it constitutes a constitutional violation.  Therefore, summary judgment with respect to this Defendant is not appropriate, and Defendants' motion is DENIED with respect to Plaintiffs' deliberate indifference claims (One and Four) against St. Clair.

### b.    Defendant Curtis Allen, M.D.

Plaintiffs also assert their first and fourth causes of action against Curtis Allen, M.D., claiming that he acted with deliberate indifference to Decedent's medical needs, and that his treatment of Decedent fell far below the medical professional standard of care such that it constituted cruel and unusual punishment in violation of the Eighth Amendment.  Allen was the Chief Physician and Surgeon at SCC from 2009-2010, and he had supervisory duties over the prison medical staff during the time of the underlying events in this case.  According to Plaintiff, Allen was also involved in approving Decedent's biopsy, despite his alleged knowledge of Decedent's heightened risk for complications and knowledge that two other hospitals refused to perform the biopsy. Allen contends to the contrary, that his involvement with Decedent's medical care was limited to supervising other SCC doctors, and that at this level of involvement his conduct did not fall below the standard of care.  ECF No. 182-1, ¶¶ 62, 63.

///

The parties dispute whether Defendant Allen had knowledge of the increased risk of life-threatening complications that the biopsy presented, given the state of Decedent's liver at the time, and whether his treatment of Decedent was so substandard that it constituted cruel and unusual punishment. This issue is material to Plaintiffs' allegations against Defendant Allen and is for the jury to determine, not for the Court to resolve on summary judgment. See Morales, 723 F. Supp. 2d at 423. Accordingly, summary judgment with respect to Defendant Allen is also not appropriate, and Defendants' motion is DENIED with respect to Plaintiffs' deliberate indifference claims against Allen.

### c. Defendant John Krpan, D.O.

Plaintiffs assert their first, third, and fourth claims for relief against Defendant John Krpan, D.O., who was employed as a physician and surgeon at SCC from October 2008 through January 2017, and provided primary care to SCC inmates. Similar to their allegations against Defendants St. Clair, Allen, and Bangi, Plaintiffs claim that Krpan acted with deliberate indifference to Decedent's medical needs, and that his treatment of Decedent fell far below the medical professional standard of care such that it constituted cruel and unusual punishment in violation of the Eighth Amendment. They also assert Krpan was negligent in his treatment of Decedent because he was involved in prescribing Decedent painkillers to mask, rather than treat, Decedent's symptoms. They additionally allege that he acted with deliberate indifference in ordering the liver biopsy despite his knowledge of Decedent's special risks and his awareness that two hospitals had refused to perform the biopsy. Krpan claims that the presence of a small amount of ascites fluid "was not a contraindication for a liver biopsy" in 2009, and thus argues that his conduct did not fall below the standard of care and did not constitute deliberate indifference to Decedent's medical needs. ECF No. 182-1, ¶¶ 51-52. Plaintiffs, however, dispute that the amount of ascites fluid found in Decedent's liver was not a contraindication for a liver biopsy, especially given that two other hospitals refused to do it. ECF No. 196-1, ¶ 51.

///

The parties dispute whether Krpan's conduct fell below the standard of care, and whether Krpan acted with deliberate indifference to Decedent's medical needs. As discussed above, whether the standard of care was met—or whether Krpan's conduct fell so far below that standard of care as to constitute a constitutional violation—is a question for the jury, not for the court on summary judgment. See Morales, 723 F. Supp. 2d at 423. These are disputed questions of material fact, and summary judgment with respect to Defendant Krpan is therefore not appropriate. Defendants' motion is DENIED with respect to Plaintiffs' deliberate indifference and negligence claims against Krpan.

### d. Defendant Edwin Bangi, M.D.

Plaintiffs assert their first, third, and fourth claims for relief against Defendant Edwin Bangi, M.D., who was a physician and surgeon at SCC from 2007-2013 and treated Decedent at SCC on several occasions. Plaintiffs assert that Bangi acted with deliberate indifference to Decedent's medical needs, and that his treatment of Decedent fell below the medical professional standard of care such that it constituted cruel and unusual punishment in violation of the Eighth Amendment. Plaintiffs additionally allege that his actions and inactions constitute negligence. More specifically, Plaintiffs claim that Bangi was negligent and acted with deliberate indifference by prescribing Decedent painkillers in response to his liver problems, and that he did not appropriately act on the results of Decedent's elevated AFP levels. Plaintiffs contend that the medical professional standard of care required that Defendant Bangi repeat the AFP test to confirm hepatocellular carcinoma, and that Bangi should not have scheduled Decedent's liver biopsy in light of the fact that he was aware of Decedent's special risks. Bangi responds that his treatment of Decedent did not fall below the standard of care, and that he acted appropriately in response to Decedent's June 2009 AFP test results. ECF No. 182-1, ¶ 16.

The parties dispute whether Bangi's treatment of Decedent fell below the standard of care, and whether Bangi acted with deliberate indifference in his medical

16

treatment of Decedent. Whether the standard of care was met in a medical malpractice case is a question of fact that is not properly resolved on summary judgment. See Morales, 723 F. Supp. 2d at 423. Similarly, whether his actions rise to the level of deliberate indifference is a fact intensive inquiry under the circumstances. Because these issues are material to Plaintiffs' allegations against Bangi, summary judgment with respect to Defendant Bangi is not appropriate, and Defendants' motion is DENIED with respect to Plaintiffs' deliberate indifference and negligence claims against Bangi.

### e. Defendant Lincoln Russin, M.D.

Plaintiffs assert their third claim for relief against Defendant Lincoln Russin, M.D. Russin was employed at the Mark Twain St. Joseph's Hospital in the Diagnostic Imaging Department at all times relevant to this case, and he administered Defendant's October 2009 MRI scan. Plaintiffs claim Russin was negligent when he reported "no evidence of tumor" based on the MRI results that they allege revealed the presence of a tumor. Plaintiffs' expert states that "any conventional reading of the MRI would have discovered a tumor," because tests given before and after Russin's MRI both indicated a tumor on Decedent's liver.

Russin raises a causation argument in his motion for summary judgment. He argues that Decedent already had "incurable liver disease" when the MRI was administered, and that "no medical intervention at that time would have changed his outcome." ECF No. 182-1, ¶¶ 66, 67. Therefore, according to Russin, Plaintiffs cannot meet the causation requirement for their negligence claim against him.

Even accepting Russin's assertion that Decedent's outcome was the same regardless of his actions, he has not established an absence of a material factual dispute such that summary judgment in his favor would be appropriate. Rather, Defendants merely conclude in their Motion that Decedent had "incurable liver disease," "no medical intervention at that time would have changed his outcome," and that Decedent had a "life expectancy of 6 months to a year and his prognosis would not have been altered with an earlier diagnosis or medical intervention." ECF No. 182-1, ¶¶ 66,

67. But these conclusions, even if supported, do not preclude Plaintiffs from meeting the causation element of their negligence claim. Indeed, Russin has not disproved the possibility that his failure to properly read Decedent's MRI scan was a proximate cause in shortening Decedent's life, even if within the shortened life expectancy he already had. If Russin's failure to identify the tumor shortened Decedent's life, Plaintiffs could establish causation and thus an actionable claim of negligence. Summary judgment is therefore DENIED.

### f.      Defendant Mario P. Sattah, M.D.

Plaintiffs assert their third and fourth claims for relief against Defendant Mario P. Sattah, M.D., a radiologist employed by CVI. As discussed above, CVI contracts with hospitals to provide imaging services, and on January 22, 2010, Sattah was assigned or selected to administer Decedent's liver biopsy at DHM. Plaintiffs allege that Sattah was negligent in his care of Decedent and that he acted with deliberate indifference towards Decedent's medical needs in administering Decedent's liver biopsy. It is undisputed that Sattah personally performed the biopsy, and Plaintiffs claim he did so despite his knowledge of the riskiness of the procedure as administered on Decedent's liver. Sattah argues that he did not have knowledge of Decedent's special risks, and that he was not aware that two hospitals had previously refused to perform the procedure. ECF No. 182-1, ¶¶ 79-82. These disputed questions of fact prevent summary judgment.

Defendant Sattah also raises a causation/ "lost chance" argument, stating in his Motion that at the time of the liver biopsy, Decedent's life expectancy was no more than three months, there were no "curative therapies" for Decedent's liver cancer, and Decedent was not a liver transplant candidate. ECF No. 182-1, ¶¶ 95, 96. However, as discussed above regarding Defendant Russin's similar argument, Sattah's assertions here do not establish that his performance of the liver biopsy did not shorten Decedent's life within his life expectancy. In fact, Decedent died three weeks after Sattah performed the biopsy, which is significantly shorter than his three-month life expectancy. Sattah

///

has thus not shown that Decedent would have died at that earlier date whether or not he had performed the biopsy and his causation argument similarly fails.

These questions of fact prevent a determination at this stage of whether Defendant Sattah was negligent and/or deliberately indifferent. Again, as discussed above, whether Sattah's treatment constituted deliberate indifference is a question to be resolved by the jury and not by the Court at summary judgment. See Morales, 723 F. Supp. 2d at 423. Because the parties dispute whether Sattah had knowledge of the heightened risk involved with Decedent's liver biopsy, and whether Sattah was deliberately indifferent, or at least negligent, towards Decedent's medical needs, summary judgment with respect to Defendant Sattah is not appropriate. Defendants' Motion is DENIED.[5]

### g. Defendant Doctors Hospital of Manteca

Plaintiffs assert their third and fourth claims for relief against Doctors Hospital of Manteca ("DHM"). Plaintiffs allege that DHM acted negligently and with deliberate indifference to Decedent's medical needs by (1) performing Decedent's liver biopsy and (2) discharging him less than one hour after the procedure, when the medical professional standard of care requires that a patient remain supine for three to four hours after the biopsy. DHM argues that it did not have knowledge that two other hospitals had refused to perform the procedure, and that in any case it was Sattah's independent decision to administer the biopsy, not the decision of DHM. ECF No. 182-1, ¶¶ 98-99. As above, these disputed questions of fact prevent summary judgment.

DHM also raises a causation argument similar to Russin and Sattah. DHM argues that there were no "curative therapies" available for Decedent's liver cancer, and that Decedent had "a short life expectancy and no real treatment options that would

---

[5] Sattah and DHM additionally move for summary judgment of Plaintiffs' sixth claim for relief, asserting Defendants were deliberately indifferent to Decedent's medical needs when they did not allow for post-biopsy recovery time in accordance with the standard of care. Plaintiffs' expert concedes, however, that additional recovery time would have made no difference. ECF No. 196-1, at §§ 87, 108. Because there are no disputed facts and Plaintiffs' claim is unsupported, summary judgment of the sixth claim is GRANTED.

19

have altered his outcome." ECF No. 182-1, ¶¶ 111, 112. However, as discussed in regard to Russin and Sattah, this argument fails. Therefore, DHM's causation argument fails. For those reasons, summary judgment with respect to DHM is not appropriate, and the Motion is DENIED.

### 3. Plaintiffs' Damages Claim

Plaintiffs include damages claims for wrongful death. The California wrongful death statute provides for damages measured by "the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection." Boeken v. Philip Morris USA Inc., 217 Cal. App. 4th 992 (2013) (internal citations omitted). In their wrongful death claim, Plaintiffs assert that Melissa Staggs, Decedent's daughter, "kept regular correspondence" and relied on Decedent "for his love, companionship, comfort, affection, solace, and moral support." ECF No. 117, ¶¶ 111. Plaintiffs further assert that Linnie Staggs, Decedent's mother, kept regular correspondence with him and also relied on him for his "love, companionship, comfort, affection, solace, and moral support." ECF No. 117, ¶¶ 115. In support of these claims, Plaintiffs state that Decedent was a "faithful and dutiful" father to Melissa Staggs, as well as a "faithful and dutiful son" to Linnie Staggs. ECF No. 117, ¶¶ 107, 115.

Defendants attempt to disprove, or at least minimize, Plaintiffs' wrongful death damages by asserting that Decedent "did not provide any financial support to plaintiffs after he was incarcerated," that Melissa Staggs visited Decedent in prison a total of five times, and that Linnie Staggs visited him once a month while he was incarcerated. ECF No. 182-1, ¶¶ 116-18. Defendants' statements at this point are insufficient to dispose of Plaintiffs' wrongful death claims. Determining the measure of damages for wrongful death "depends to a great extent upon the sound judgment of the jurors as to what would be just, reasonable, and proper under all the circumstances." In re California Nav. & Imp. Co., 110 F. 670 (N.D. Cal. Sept. 3, 1901). "[T]he amount of damages awarded here in wrongful death cases decided under California law properly includes amounts

designed to compensate the plaintiffs for loss of the decedent's society, comfort, protection, love, companionship, [and] affection." In re Pago Pago Aircrash of Jan. 30, 1974, 525 F. Supp. 1007, 1019 (C.D. Cal. Oct. 9, 1981). Importantly, wrongful death damages are "inherently nonpecuniary, unliquidated and not readily subject to precise calculation," but rather are left "to the subjective discretion of the trier of fact." Id. (quoting Greater Westchester Homeowners Assn. v. City of Los Angeles, 26 Cal. 3d 86, 103 (1979)).

Defendants have therefore failed to establish that summary judgment is appropriate on Plaintiffs' claims for wrongful death damages. To the extent Defendants move for summary judgment with regard to Plaintiffs' wrongful death claim, that motion is consequently DENIED.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 188, is GRANTED. Defendants' Motion for Summary Judgment, ECF No. 182, is GRANTED with respect to the sixth cause of action, and otherwise DENIED. Plaintiffs' Motion to Strike, ECF No. 200, is DENIED.[6]

IT IS SO ORDERED.

Dated: March 20, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs' Objections, ECF No. 196-4, are overruled.