UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNIE STAGGS, individually and as Administrator of the Estate of Robert E. Staggs, and MELISSA STAGGS,<br><br>Plaintiffs,<br><br>v.<br><br>DOCTORS HOSPITAL OF MANTECA, INC., et al.,<br><br>Defendants. | No. 2:11-cv-00414-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Linnie Staggs, individually and as the Administrator of the Estate of Robert E. Staggs ("Decedent"), and Melissa Staggs (collectively "Plaintiffs"), seek redress from, <u>inter alia</u>, Defendants Jack St. Clair, M.D.; Curtis Allen, M.D.; Lincoln Russin, M.D.[1]; Edwin Bangi, M.D.; John Krpan, D.O.; Mario P. Sattah, M.D.; Doctors Hospital of Manteca ("DHM"); and various Doe Defendants (collectively "Defendants") stemming from Defendants' medical treatment of Decedent during his incarceration at Sierra Conservation Center ("SCC").

Plaintiffs' operative complaint raises eight claims for relief, including:

(1) inadequate medical care in violation of the Eighth Amendment's prohibition of cruel

---

[1] Since filing the present motion, Plaintiffs have reached a settlement agreement with Defendant Dr. Russin. See ECF Nos. 220, 223, 229.

1

and unusual punishment; (2) failure to summon and provide medical care in violation of Cal. Gov. Code § 845.6; (3) negligence; (4) deliberate indifference in conducting a liver biopsy; (5) violation of rights by threats, intimidation, or coercion in violation of Cal. Civ. Code § 52.1; (6) inadequate post-biopsy recovery; (7) wrongful death; and (8) loss of companionship. After the close of discovery, Defendants filed a Motion for Summary Judgment (ECF No. 182), to which the Court issued its Memorandum and Order on March 21, 2018. ECF No. 203. The Court granted the motion regarding Plaintiffs' Sixth Cause of Action for inadequate post-biopsy recovery, but otherwise denied Defendants' requests. Order, ECF No. 203, at 2:4-7.

Presently before the Court is Defendants' Motion for Reconsideration, contending that the Court made several clear errors of law in ruling on Defendants' Motion for Summary Judgement. See Mot. Recon., ECF No. 204. For the reasons that follow, Defendants' Motion for Reconsideration is GRANTED in part and DENIED in part.[2]

## BACKGROUND[3]

Decedent Robert Staggs was incarcerated at SCC beginning on August 5, 2008. He was diagnosed with Hepatitis C virus ("HCV") in 1980 and began to experience worsening symptoms associated with his HCV diagnosis in May 2009, during his prison term. Those worsening symptoms included pruritus, darkened urine, and open sores. Plaintiffs allege that Decedent's symptoms became so extreme that they gave him insomnia and interfered with his ability to participate in regular daily activities. According to Plaintiffs, while Decedent's symptoms pointed to acute liver failure, Defendants only gave him pain medication and other treatments intended to mask the symptoms instead

---

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230.

[3] The following facts are derived from this Court's earlier order (ECF No. 203) as well as the parties' respective briefings, statements of disputed and undisputed facts, and Plaintiffs' Fourth Amended Complaint.

2

of properly diagnosing and addressing the underlying problems.  In June 2009, Defendant Bangi, one of the SCC doctors, administered a blood test to Decedent that showed an increase in Decedent's alpha-feta protein ("AFP") level from 11 to 35, while a normal value is between zero and eight.  Following this result, Defendants continued to give Decedent only painkillers and did not repeat the AFP test or give him further treatment at that time.  In July 2009, Defendant Bangi ordered an MRI of Decedent's liver.  That test was administered on August 30 of that year and showed a possible lesion.

On December 8, 2009, Decedent submitted a 602-inmate appeal form to the SCC Healthcare Appeals Office requesting medical attention for his symptoms.  He received a denial of his request on December 21, 2009, which he appealed two days later.  On December 26, 2009, Decedent went "man-down" in his cell, and was taken to the Sonora Regional Medical Center hospital where he received an ultrasound and a CT scan.  Both tests indicated cirrhosis and several lesions in Decedent's liver, including one five-centimeter lesion.  In January 2010, Defendants St. Clair and Allen scheduled a biopsy of Decedent's liver that Defendant Bangi had originally ordered in October 2009.  After two hospitals refused to perform the biopsy on Decedent because of the high risks involved in biopsying a liver like Decedent's with ascites fluid in the peritoneal cavity, DHM agreed to administer the procedure.  Plaintiffs assert that Decedent was at a higher risk for acute liver bleeding because of his condition.

Decedent's liver biopsy was performed at DHM on January 22, 2010.  Plaintiffs' expert opined that the "universal protocol" for liver biopsies requires the patient to "remain immobile in a supine position" for "three to four hours immediately following the procedure" to help stop internal bleeding, even if the liver is otherwise healthy.  However, it is undisputed that Defendants forced Decedent to leave his hospital bed less than an hour after the biopsy so he could be transported back to SCC.  The next day, Decedent was unable to urinate, his abdomen became swollen and distended, and he soon began to vomit.  No prison personnel came to Decedent's aid until the afternoon of the following

day, January 24, 2010.  At that point, Decedent was transferred to the Operating Housing Unit at SCC, and on January 25, 2010, he was taken to the San Joaquin Medical Center for emergency treatment.  His biopsy results were returned the next day and confirmed hepatocellular carcinoma.  Decedent was transferred to the California Medical Facility in Vacaville on February 4, 2010, where he died on February 12, 2010.  Plaintiffs' expert opined that the immediate cause of Decedent's death was "blood loss into his peritoneum" resulting from the liver biopsy performed on January 22, 2010.  His official causes of death on his death certificate were hepatocellular carcinoma and end stage liver disease.

Regarding the facts described above, Plaintiffs allege the following action or inaction by each named Defendant:

- Dr. St. Clair: screened out Decedent's 602 inmate appeal for "abuse of the appeal procedure"; approved Decedent's liver biopsy despite knowing about Decedent's elevated risk for complications; failed to cause Decedent to be included in the HCV screening program and failed to cause him to be referred to a specialist despite HCV treatment protocols.
- Dr. Bangi: prescribed Decedent painkillers to mask his symptoms instead of treating his liver disease; scheduled Decedent's liver biopsy despite knowing about Decedent's elevated risk for complications.
- Dr. Allen: approved Decedent's liver biopsy despite knowing about Decedent's elevated risk for complications; failed to cause Decedent to be referred to a specialist.
- Dr. Russin: administered Decedent's October 2009 MRI scan and failed to diagnose a tumor based on that test; failed to administer a multiphase MRI that would have revealed Decedent's hepatocellular carcinoma.
- Dr. Krpan: prescribed Decedent painkillers to mask his symptoms instead of treating his liver disease; ordered Decedent's liver biopsy despite knowledge of Decedent's heightened risk for complications.

4

- Dr. Sattah: administered Decedent's liver biopsy despite knowledge of Decedent's heightened risk for complications; performed the biopsy in a way that further increased risk to Decedent.
- Doctor's Hospital of Manteca: under a theory of respondeat superior for Sattah's conduct, performed Decedent's liver biopsy and discharged Decedent from the hospital too soon after the procedure was completed.

Plaintiffs' first claim for relief alleges that Defendants St. Clair, Bangi, Krpan, Allen, and certain Doe Defendants violated Decedent's constitutional rights by providing him such inferior medical treatment that it constituted cruel and unusual punishment in violation of the Eighth Amendment. ECF No. 117 at 17-18. Plaintiffs' second claim alleges that certain Doe Defendants failed to summon and provide proper medical care for Decedent in violation of Cal. Gov. Code § 845.6. Id. at 18-19. Plaintiffs' third claim for relief alleges negligence against Defendants Krpan, Bangi, Sattah, DHM, and Doe Defendants, claiming they violated the standard of care by failing to provide adequate testing and treatment of Decedent's medical condition. Id. at 19-20. In their fourth claim, Plaintiffs allege deliberate indifference against Defendants Krpan, Allen, St. Clair, Sattah, Bangi, DHM, and other Doe Defendants in their decision to conduct a liver biopsy on Decedent. Id. at 20-21. Plaintiffs' fifth claim for relief alleges that Doe Defendants utilized threats, intimidation, and coercion against Decedent in violation of Cal. Civ. Code § 52.1 to force him to leave his hospital bed after the biopsy. Id. at 21. Plaintiffs' sixth claim for relief alleges deliberate indifference against Defendants DHM, Sattah, and other Does arising from their release of Decedent from the hospital less than one hour after his liver biopsy. Id. In the seventh claim for relief, Plaintiff Melissa Staggs, Decedent's daughter, alleges wrongful death under Code Civ. Pro. § 377.60. Id. at 22. In the eighth claim for relief, Plaintiffs Linnie Staggs and Melissa Staggs, Decedent's mother and daughter, respectively, allege loss of companionship. Id. at 23.

///

///

**STANDARD**

A court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). This principle is generally embodied in the law of the case doctrine. That doctrine counsels against reopening questions once resolved in ongoing litigation. Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 (9th Cir. 1989) (citing 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478). Nonetheless, a court order resolving fewer than all of the claims among all of the parties is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b).[4] Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." United States v. Martin, 226 F.3d 1042, 1048-49 (9th Cir. 2000), cert. denied, 532 U.S. 1002 (2001). The major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Pyramid, 882 F.2d at 369.

Local Rule 230(j) requires a party filing a motion for reconsideration to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." E.D. Cal. Local Rule 230(j). Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for relief through reconsideration. See, e.g., Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981). A district court may properly deny a motion for reconsideration that simply reiterates an argument already presented by the petitioner. Maraziti v. Thorpe, 52 F.3d 252, 255 (9th Cir. 1995). Finally, reconsideration requests are addressed to the sound discretion

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

6

of the district court.  Turner v. Burlington N. Santa Fe R.R., 338 F.3d 1058, 1063 (9th Cir. 2003).

**ANALYSIS**

In their Corrected Fourth Amended Complaint, Plaintiffs allege various violations against fifteen separate defendants, eight of whom are specifically named, and seven of whom consist of groups of Doe Defendants.  ECF No. 117.  Defendants' present Motion for Reconsideration addresses reconsideration by party, rather than by claim, and the Court takes the same approach here.

    **A.**    **Defendant Dr. Sattah**

By way of this present motion, Defendants argue that the Court made several clear errors of law in denying summary judgment in favor of Dr. Mario Sattah ("Dr. Sattah") on Plaintiffs' Section 1983 deliberate indifference claim.  As an initial matter, Defendants argue that reconsideration is warranted because the Court mistakenly analyzed Dr. Sattah's entitlement to qualified immunity when he never moved for such immunity.  Mot. Recon. at 3:25–4:5.  Defendants are correct in that Dr. Sattah did not move for summary judgment on grounds of qualified immunity.  As a result, the Court's analysis concerning the applicability of immunity as to Dr. Sattah, found between pages 11:25 and 13:16 in the earlier Order (ECF No. 203), was indeed unnecessary.  Therefore, Defendants' Motion for Reconsideration is GRANTED with regard Plaintiffs' deliberate indifference claim against Dr. Sattah.  However, upon reconsideration, the Court affirms its previous holding that summary judgment in favor of Dr. Sattah is not appropriate for this claim.

Defendants reiterate several contentions made in their prior motion, namely that Dr. Sattah is a private radiologist, not a state doctor, and is therefore entitled to summary judgment on Plaintiffs' deliberate indifference claim.  Mot. Recon. at 4:6-10 (citing Defs.' Memo. ISO MSJ, ECF No. 182-2, at 5-7).  In their Motion for Summary Judgment,

Defendants argued that because Central Valley Imaging ("CVI") alone, not DHM or the California Department of Corrections and Rehabilitation ("CDCR"), employed Dr. Sattah, he must be considered a private doctor. See Defs.' Memo. ISO MSJ at 5:14–7:5. To further support this contention here, Defendants point to Plaintiffs' failure to ascertain the formal contracts between Dr. Sattah, DHM, and/or CVI. Mot. Recon. at 4:8-15. Without these contracts, Defendants argue, no genuine dispute concerning Dr. Sattah's status as a private doctor exists. Id. The Court disagrees for the same reasons delineated in the previous Order, in that "[w]hether a private physician who contracted with the state to treat inmates is acting under color of state law is a fact-intensive inquiry." ECF No. 203 at 12:9-11. As part of this fact-intensive inquiry, a jury could find that Dr. Sattah was a state-actor under either the joint action or nexus tests. Id. at 1-10. That Plaintiffs did not submit specific documents delineating the contractual boundaries of Dr. Sattah's relationship with these various entities does not inherently show the lack of a genuine dispute—a conclusion especially true since it is undisputed that Dr. Sattah performed Decedent's liver biopsy at DHM's facility. The contractual circumstances that led Dr. Sattah to perform the biopsy in question are part of the fact-intensive inquiry that the Court found necessary for determination by a jury.

      Defendants also contend that Plaintiffs failed to carry their burden in showing that Dr. Sattah had knowledge of the riskiness of the procedure as administered on Decedent's liver. Mot. Recon. at 6:11–7:4. The Court previously held that the question of Dr. Sattah's knowledge of the risks associated with Decedent's liver biopsy was a disputed question of fact inappropriate for determination on summary judgment. ECF No. 203 at 18:14-19. Here, because Defendants raise no new evidence or laws to support altering the Court's prior ruling on this matter, their present request likewise fails. Apart from the narrow issue of qualified immunity as to Dr. Sattah, discussed supra, Defendants in essence ask the Court to revisit its prior decisions simply because they disagree with the outcome.

      Therefore, Defendants' Motion for Reconsideration on Plaintiffs' deliberate

indifference claim against Dr. Sattah is GRANTED.  However, upon reconsideration, Court affirms its original holding, and Defendants' request for summary judgment on Plaintiff's deliberate indifference claim against Dr. Sattah is DENIED.

### B. Defendant DHM

Defendants contend that the Court errored in finding that DHM could be held liable under a theory of respondeat superior for Dr. Sattah's conduct in performing Decedent's liver biopsy because Dr. Sattah was neither an employee or agent of DHM. Mot. Recon. at 7:5-8, 19-21.  As discussed in the prior Order, and for the same reasons delineated above, determination of the relationship between Dr. Sattah and DHM requires a fact-intensive inquiry, which makes it inappropriate for determination on summary judgment.  Defendants do not meet the requisite standards for reconsideration on this issue, and repetitive assertions that the Court's prior decision constituted clear errors of law, absent new arguments or evidence, are insufficient.  For these reasons, Defendants' Motion for Reconsideration regarding Defendant DHM is DENIED.

### C. Defendants Dr. Bangi, Dr. Krpan, Dr. St. Clair, and Dr. Allen

The present motion seeks reconsideration of the Court's decision denying Defendants Dr. Edwin Bangi, Dr. John Krpan, Dr. Jack St. Clair, and Dr. Curtis Allen (collectively "SCC Defendants") requests for summary judgment.  Mot. Recon. at 9:2–14:2.  Defendants' contentions in support of reconsideration include, in part, that Plaintiffs lack sufficient evidence to show that SCC Defendants fell below the proper medical standard of care (id. at 10:3-6), and that the Court erroneously cited to "Morales, 723 F. Supp. 2d at 423" in support of denying SCC Defendants' summary judgment. Mot. Recon. at 10:7-13.  The Court concedes that it gave an incomplete citation—an error which led to Defendants' confusion on this matter—in that the prior Order intended to cite to Morales v. Monagas for the proposition that "[i]n a medical malpractice case, issues of deviation from the medical standard of care are questions of fact that must be decided by the jury."  723 F. Supp. 2d 416, 423 (D.P.R. 2010) (citing Cortes–Irizarry v. Corp. Insular de Seguros, 111 F.3d 184, 189 (1st Cir.1997)).

As discussed in the Court's earlier Order, each SCC Defendant played a role in providing medical care to Decedent either before, during, and/or after the performance of the liver biopsy that immediately preceded his death. The Court previously found that whether each SCC Defendant met the respective medical standard of care was a question for a jury, and nothing in Defendants' present motion raises new evidence or law sufficient to call for reconsideration of this finding. Therefore, Defendants' Motion for Reconsideration is DENIED regarding the SCC Defendants.[5,6]

### D. All Defendants

Finally, all Defendants move for reconsideration on the grounds that the Court misapplied California's so-called "lost chance" theory of liability. Mot. Recon. at 14:4–16:6. In support of their bid for reconsideration, Defendants again rely on Bromme v. Pavitt, 5 Cal. App. 4th 1487 (1992) for the proposition that Plaintiffs cannot recover as a result of Decedent's death because he was already terminally ill at the time his liver biopsy procedure. Mot. Recon. at 14:9-15. Defendants introduce no other cases to support their reconsideration request, and as Plaintiffs correctly note, simply reiterate the arguments raised in their earlier motion. Nor have they shown any new facts or new circumstances that would make it manifestly unjust for the Court not to change its mind. See Pyramid, 882 F.2d at 369. Consequently, Defendants' Motion for Reconsideration fails.

/ / /

/ / /

/ / /

---

[5] Defendants also argue that the Court errored in allowing Plaintiffs to untimely raise a new theory of liability, namely Plaintiffs' contention that SCC Defendants did not refer Decedent to a specialist despite CDCR protocols requiring such a referral. Mot. Recon. at 12:16–14:2. However, Defendants' contentions are not well taken, as they simply reiterate arguments previously presented to the Court. See Defs.' Reply ISO MSJ, ECF No. 198, at 12:5–15:6.

[6] Defendants correctly note that the Court's earlier Order incorrectly listed the date of Decedent's transfer date to SCC as January 8, 2004 when the correct date is August 5, 2008. Mot. Recon. at 13:17–14:2; see also ECF No. 203 at 2:11. However, despite Defendants' assertions to the contrary, the Court does not find that its error formed a manifest injustice to Defendants.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Reconsideration, ECF No. 204, is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED with regard to the Plaintiffs' deliberate indifference claim against Dr. Sattah. However, upon reconsideration, the Court affirms its original holding in DENYING Defendants' request for summary judgment on this claim. As to the remaining contentions raised in the Motion, Defendants' requests for reconsideration are DENIED.

IT IS SO ORDERED.

Dated: January 29, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE